### THE BOSTON TURNPIKE COMPANY *against* The town of POMFRET.

It is competent for a town-clerk to rectify any error which he had made in recording the proceedings of the town, by amending the record, so that it should state those proceedings truly.

And an application for a writ of *mandamus*, in such case, is generally unnecessary.

The law attaches much less sanctity and importance to the entries of the votes and proceedings of towns and other municipal corporations, than to judicial records; and the rules which govern the amendment of the latter, are not applicable to the correction of the former.

The power of a town-clerk to amend his records, is confined to the individual whose duty it was originally to make them, and is allowed to him only while he is in office.

Against the abuse of this power, the law has provided safe-guards, not only in the selection of the officer, and the sanctions it imposes upon him, but in the provisional remedy it affords, by writ of *mandamus*.

Where an amendment of the record of a town vote, was made, some years after the original entry, by the town-clerk, not on his own personal knowledge, but on the information of others; it was held, that such amendment was not invalid.

Where the vote of a town may have the effect of a *contract* with another party; this does not affect the power of the clerk to amend his record.

This power is derived solely from his official character, and does not depend on the permission of the court, in which the record is offered as an instrument of evidence, nor on an enquiry into the truth of it, as originally made, or as amended.

An amended record, when offered in evidence, is, like an original record, conclusive evidence of its own truth. [As to most of these positions, and the result, two judges dissenting.]

*Tolland,*
*August, 1850.*

Boston
Turnpike Co.
*v.*
Pomfret.

THIS was an action on an agreement, alleged to have been made by the defendants, in 1843, to assume the turnpike road of the plaintiffs, which passed through the town of *Pomfret ;* and alleging a breach, by the defendants, in not keeping said road in repair according to their contract, by reason of which an injury was sustained by a passenger.

The cause was tried at *Tolland, October* term, 1849.

On the trial, it appeared, that the accident causing the injury, happened on the 17th of *January*, 1844. The plaintiffs claimed, that the undertaking of the defendants covered this time ; in proof whereof, they offered in evidence a writing, purporting to be a copy of the record of a vote, passed at a legal meeting of the inhabitants of the town of *Pomfret*, on the 2d day of *October*, 1843, duly certified by *Job Williams*, clerk of said town. According to this document, the liability of the defendants commenced on the 1st of *January*, 1844.

The defendants objected to the admission of such writing in evidence, on the ground, that it was not a correct copy of the record of the original vote, but materially variant therefrom ; and in support of this claim, they offered in evidence the original record book of the town ; according to which the liability of the defendants commenced on the 1st of *April*, 1844.

The plaintiffs claimed, that the book had been altered, and did not contain a true record of the vote, but that the writing which they offered, contained the only legal evidence of the vote actually passed.

Upon these conflicting claims of the parties, the court permitted the plaintiffs to proceed with their evidence, and to read the copy which they had offered, as *prima facie* evidence of the vote passed.

After the plaintiffs had closed their evidence, the defendants reverted to said record book, and called Mr. *Williams*, who was clerk of the town when said vote was passed, and

*Tolland,*
*August, 1850.*

Boston
Turnpike Co.
*v.*
Pomfret.

had ever since continued to hold that office, to prove, that the book before the court was the record book of the town, and then read therefrom the vote in question, as it there appeared. Upon enquiry made by the plaintiffs, he testified, that he was present at the meeting when the vote was passed, and shortly after recorded it upon the town records, in conformity with the copy shown by the plaintiffs, supposing, at the time, that he had made a true record of the vote ; and under that impression, he made and delivered to the plaintiffs the copy produced by them. But he afterwards discovered, that he had made a mistake in recording the vote, and thereupon, in the month of *March*, 1849, he altered the record to make it as it now appears. This alteration he did not make from any *memorandum* which he had previously made, nor from any recollection of his own as to the terms of the vote ; but upon enquiry of the moderator of the meeting, and other respectable persons then present, he became satisfied, that the record, as originally made by him, was erroneous, and therefore altered it to its present form. He was perfectly satisfied, that the record, as it now stands, was a true record.

The defendants thereupon claimed, that the record as it now stands upon the book, was the only legitimate evidence of the vote ; that no parol evidence could be received to contradict it ; and that if such record be erroneous, the plaintiffs' remedy is by a *mandamus,* or some other appropriate process.

The court decided, that it was competent for the plaintiffs to show, by parol evidence, that the original record had been falsely and improperly altered, by the clerk, and so was not a true record.

To show that the record had been rightfully amended, by the clerk, and made in conformity to the vote, as it was actually passed, the defendants offered the testimony of *Charles Chandler*, the moderator of the meeting, that the vote was passed in the form in which it stands recorded in the amended record.

The plaintiffs objected to the admission of this evidence, claiming that no parol evidence was admissible to prove what vote had been passed, or to contradict the record as originally made ; and that, if it were competent for the clerk to alter his record, after it had been made, he could do it only from *memoranda* previously made, or at least from his own

personal recollection, and not from information derived from others. But this objection was overruled, and the evidence received.

The jury returned a verdict for the defendants; and the plaintiffs moved for a new trial.

*Welch* and *Toucey,* in support of the motion, contended, 1. That the vote of the town of *Pomfret,* as originally recorded, is the only proper evidence of what was done in the town meeting. *Stat.* 628. § 1. (ed. 1838.)

2. That if, under any circumstances, the record may be amended, still the facts in this case did not warrant the alteration. There was nothing to amend by—no *memorandum*—no personal recollection—nothing but the information of others, out of court, and not under oath. This, instead of making a record, as the law regards it, of the highest sanctity, importing absolute and unimpeachable verity, would open a door for the introduction of the weakest and loosest of all evidence—nay, the instrument of fraud, whenever a town-clerk could be found, if honest himself, yet simple enough to be *satisfied* with the statements of others. They referred to and commented on *Avery* v. *Butters,* 9 *Greenl.* 16. *Welles* & al. v. *Battelle,* 11 *Mass. R.* 477. *Thatcher* v. *Miller,* in err. *Id.* 413. *Hartwell* & al. v. *Littleton,* 13 *Pick.* 229. 232. *Chamberlin* & al. v. *Dover,* 13 *Maine R.* 472. *Wilkie* v. *Hall,* 15 *Conn. R.* 32.

3. That the vote of the town was, in this case, a *contract* between the parties; and no act of one party, without the consent of the other, could vary its terms.

4. That if there was an error in the record, as originally made, it could be rectified, by virtue of a *mandamus,* after a judicial investigation. 1 *Sw. Dig.* 563, 4.

*T. C. Perkins* and *H. Johnson,* contra, contended, 1. That a town-clerk has power to alter the record of a town previously made by himself. *Welles* v. *Battelle* & al. 11 *Mass. R.* 477. *Hartwell* v. *Littleton,* 13 *Pick.* 229. 232. *Chamberlin* & al. v. *Dover,* 13 *Maine R.* 472. *Baldwin* v. *Marshall,* 2 *Humph.* 116.

2. That a town-clerk, in making his record, acts at his peril; and if he makes a false record, he may be punished for

*Tolland,*
*August, 1850.*

Boston
Turnpike Co.
*v.*
Pomfret.

his misconduct. *Welles* & al. v. *Battelle* & al. 11 *Mass. R.* 481. *Chamberlin* & al. v. *Dover*, ubi sup.

3. That in this case, there was no necessity for a *mandamus.* That is brought only to compel an officer *neglecting* his duty, to perform it; and the writ must state a *refusal* to do the act. 1 *Sw. Dig.* 564.

4. That if the record is wrong as it now stands, and a *mandamus* is the appropriate remedy, it is open to the plaintiffs. But if, on the other hand, the record now is right, there is no occasion for resorting to it; the court will sustain the verdict. If, on the whole, the cause is rightly decided, no new trial will be granted.

5. That towns have no power to contract to repair the roads of other corporations. The town of *Pomfret* did not take this as a *town* road. The turnpike company still remain liable to travellers for injuries resulting from defects in their road. This is, at most, a mere contract of *indemnity ;* which a town has no power to make, unless specially authorised; and no special authority has been shown or claimed.

STORRS, J. The first question presented on this motion, is, whether the entry of the vote of the town of *Pomfret*, as originally made, by the clerk of that town, and as evidenced by the copy produced by the plaintiffs, or the entry of it as amended by him, and as it now appears on the record book, is to be deemed the true record of the proceedings of the town ; and this depends on the question, whether the clerk had the legal power to make that amendment. A majority of the court are of opinion, that both on principle and authority, it was competent for him to rectify any error which he had made in recording the proceedings of the town, by amending the record, so that it should describe those proceedings truly.

Our statutes expressly require town-clerks to keep the record books of their respective towns, and to enter truly all the votes and proceedings of the town. *Tit.* iii. *ch.* v. § 58. *p.* 147. This duty is not performed, by an erroneous entry of those votes and proceedings; and unless we are to adopt the technical idea, that, as to any particular proceeding of the town, the clerk is *functus officio* as to his power of recording it, when he has once made an entry of it, however untruly,

on the record book, we can perceive no good reason why it *Tolland,* August, 1850.
may not be rectified by him. We know of no authority
which requires so narrow a construction of his powers: and
it would, in many cases, work great inconvenience and in-
justice, not only to the town whose proceedings are thus re-
corded, but to others who are interested in those proceedings.
If, when the entries of them are once made, it is beyond the
power of the recording officer to amend them, it would be
necessary, in every case of error, for those who might be af-
fected by them, to resort to the dilatory and expensive remedy
by *mandamus,* in order to have them corrected ; and in many
cases, there would be reason to fear, that such remedy would
be quite inadequate, from lapse of time, or the death of the
clerk, whose official position furnishes him the best means of
knowing or ascertaining what was done by the town, or the
conflict of memory among the spectators, to whom it would
be necessary to resort for proof of the proceedings. Nor do
we perceive any propriety in requiring this remedy to be re-
sorted to, where the clerk is ready to correct his error. By
amending the record himself, he only does what the court
would direct him to do, on the ground that his duty required
it. An application for a *mandamus,* in such case, is generally
unnecessary. To require it, would be to adopt a rule more
strict than that which prevails in regard to amendments of
judicial records.

But the law attaches much less sanctity and importance to
the entries of the votes and proceedings of public corpora-
tions in their books, which are not technically records, but
are termed *public writings* not of a judicial character, than
to records properly so called, although the former are consid-
ered to be in the nature of records, and indeed are called
such in our statutes, and have a like force and effect, when
adduced in evidence.

Courts, however, have never adopted, and from their na-
ture it would not be practicable to adopt, those strict, techni-
cal and peculiar rules as to their correction, which apply to
the amendment of judicial records. On the contrary, it is
deemed of so great importance to uphold the proceedings of
our municipal corporations, that courts are disposed to be as
indulgent in allowing entries of their proceedings to be
amended, as is consistent with the safety of those whose in-

*Boston Turnpike Co. v. Pomfret.*

*Tolland,*
August, 1850.

Boston
Turnpike Co.
*v.*
Pomfret.

terests would be affected by them. From carelessness, on the part of the clerks of our towns and other municipal corporations, or their not sufficiently appreciating the importance of fully and precisely describing their proceedings, they are frequently entered on their records very loosely and irregularly; and it is not to be expected that those officers will always be competent to perform their duty, in this respect, with the correctness which is desirable: to hold, therefore, that their entries, as first made, are beyond the reach of their subsequent correction, would produce the greatest confusion.

It is urged, that the sanctity of our records, and the security which they are designed to furnish, would be destroyed, and that they would be subject to constant mutilation and change, if, when once made, any alteration of them is to be tolerated.

We think, however, that while the amendment of them is confined to the officer whose duty it was originally to make them, and is allowed even to him only while he is in office, there is no serious ground for apprehension.

In the first place, there is every practicable security furnished to ensure a faithful discharge of the duties of these officers. They are selected, by the inhabitants of the towns, presumably for their integrity and capacity for the office; they are under an oath faithfully to execute its duties; their records are open to public inspection; and their entries, in the first instance, as well as any alteration of them, are made at their peril, as they are personally liable for all injuries arising from a violation or neglect of duty. These constitute as strong safeguards against falsehood in amendments to the original entries, as in those entries themselves.

But, lest these securities should prove insufficient, the law further provides a most effectual remedy for any errors in their records, whether arising from design, mistake, or accident, by the writ of *mandamus*, by means of which these errors may be corrected, on the application of any person interested; so that whatever may be the conduct or disposition of the clerk, it is not at his option, either as to his first entries or subsequent alterations, to determine how the record shall ultimately stand.

The authorities fully establish the power of clerks of towns

and other municipal corporations, to amend their records, while they continue in office.

In *Welles* & al. v. *Battelle* & al. 11 *Mass. R.* 477. the record was made by the town-clerk, when in office, under a former election, and was amended by him, by adding to it words, showing by whom the oath of office was administered to him, when he was formerly elected to the office, and also to assessors chosen at the same meeting ; and the amendment was made several years after the original entry of their appointment, and after the suit was brought against said assessors, in which it was necessary for them, in order to sustain their defence, to show by whom the oath to them was administered ; and the amendments were held to have been legally made.

The correctness of this decision was recognized, by the same court, in *Hartwell* v. *Littleton,* 13 *Pick.* 229. in which, however, it was decided, that one who was formerly a town-clerk, could not, after he had ceased to be such, amend a record made by him while he was in that office.

In *Bishop* v. *Cone* & al. 3 *N. H. Rep.* 516. it was held, that a town-clerk, while in office, might amend his record of a vote of the town to raise money by a tax, under which vote the defendants justified, as select-men of the town, in an action of trespass *de bonis,* brought against them for issuing a warrant for the plaintiff's proportion of said tax, where the vote, as amended, would constitute a justification to the defendants in issuing said warrant, but as originally recorded, would be no defence.

In *Chamberlain* v. *The Town of Dover,* 13 *Maine R.* 466. which was an action of *assumpsit* on a contract alleged to have been made with the plaintiff, by certain persons assuming to be authorized, by the defendant, to contract on their behalf, a vote of the defendants was, at the instance of the plaintiff, allowed to be amended, after the commencement of the suit, by the present clerk, who made the original record, so as to show such authority, which did not appear from the vote, as originally recorded. The court say : " It is the duty of the clerk to record the doings and proceedings of the town; and if through inadvertence or misapprehension, the record has been defectively made, it is competent for him, while in office, to complete it according to the truth. He acts at his

peril, and will be liable, if he falsifies or mistakes what it is his duty to record." This case shows the invalidity of the objection made to the amendment, in the present case, on the ground that it respects the terms of a contract between the parties. The vote is only an act of the town which furnishes evidence of the contract; and in regard to the propriety of allowing it to be amended, we perceive no difference between such a vote, and any other by which its own interests, or those of others, may be affected.

Nor is the amendment invalid, in this case, because it was made, by the town-clerk, not on his own personal knowledge, but on information derived from others. An amendment of a record stands on the same ground, in this respect, as the original record; and neither can be impugned, by an enquiry into the sources of knowledge on which it was made. It is not unusual that entries in our public records, even in those of a judicial character, are made by the recording officer, without any personal knowledge of the truth of what is recorded: but, when thus made, has it ever been supposed, that they were not to be deemed records, on that account? It is sufficient, that the fact recorded is ascertained by him, by whatever means, and that it is recorded by him, or by his authority.

Nor is his power originally to make, or afterwards to amend, a record, to be determined, by an enquiry into the truth of it, as so made or amended. Such power is derived solely from his official character, and does not depend on the permission of the court in which the record is offered as an instrument of evidence. The only enquiry then, is, whether it is a record. Being shown to be such, it imports absolute and uncontroulable verity, and is, therefore, conclusive evidence of the facts which it states. It would be obviously absurd to make its admissibility or effect, as a record, depend on previous proof of its truth.

We attach no importance to the testimony adduced, in this case, as to the truth of the facts stated in the record as amended, as it was not claimed, that the amendment, if erroneous, was made fraudulently. The town-clerk having legal authority to make the amendment, and having exercised it honestly, the amendment was, like an original record, conclusive evidence of its own truth; and it was the duty of the

court to receive it as such. If it was in fact false, the remedy was a suit, by the party injured, or an application for a *mandamus.*

We think, therefore, that the amended record offered by the defendants, on the trial, is to be deemed the true record of the vote of the town; and that, as it did not support the contract declared on, the plaintiffs are not entitled to a new trial. Hence it is unnecessary to determine, whether the defendants had authority to make that contract.

In this opinion, WAITE and ELLSWORTH, Js. concurred.

CHURCH, Ch. J., dissented. The plaintiffs offered in evidence, a certified copy of the vote of the town of *Pomfret,* in support of their claim. This was the proper evidence of the fact intended to be proved by it. The defendants attempted to repel its effect, by introducing what purported, on its face, to be the original record, but which was not in truth the original, but on the contrary, was one which the town clerk had mutilated, and essentially altered from its original shape and substance, into the condition in which it appeared on the trial. And the real question is, whether the town-clerk had a legal right to alter the record of the votes of the town of *Pomfret,* under the circumstances set up in the motion.

The vote was passed, at a town-meeting, on the 2nd day of *October,* 1843, and was then recorded. This record was altered, in *March,* 1849, six months after this suit was commenced; and it was altered without the aid of any written *memorandum* to aid the memory, and without any recollection by the clerk of the new and different fact inserted into it, and only upon the verbal representations made to him, by the moderator of the meeting, and of other *respectable* persons, nearly five years after the meeting was holden.

I cannot acquiesce in the views expressed by the court; and I am persuaded, if the principle and the practice, now sanctioned, shall prevail and be applied to other cases, that they must have the effect of extensively disturbing titles, derived not only from the acts of corporations, but also from deeds and judicial records. Our public records have, hitherto, been supposed to furnish the best evidence of the facts

stated by them, and to be a safe reliance. If a town-clerk may, without any reliable *memorandum,* and even unaided by his own memory, thus alter a record of a town vote, he may, depending alone upon the distant and uncertain recollection of others, as well change the certificate made upon a deed of land when left for record, and overturn the titles of purchasers. And so too, the clerk of a court, who like a town-clerk, is only a ministerial officer, may, in the same *ex parte* manner, essentially alter the records of the court. In this way, the uncertainty of representations is substituted for recorded and sworn truth.

Since the decision of the case of *Wilkie* v. *Hall,* 15 *Conn. R.* 32. I supposed it was considered settled, in this state, that the record of a court could not be altered by the clerk, after the expiration of the term at which the cause had gone into judgment ; because then he was the mere keeper of the record ; and then, it required the interference of the court itself, to justify an alteration in a material part. The same salutary principle is equally applicable here, so far as the cases are analogous. And here, after such a lapse of time, and without *memorandum* or memory to aid the clerk, application should have been made, by proper process, to a proper court, to correct a mistake in the record, if one existed, and thus give to the opposite interested party, an opportunity to show that the record was already right.

Cases in other states have been relied upon here, in which town-clerks have been permitted, under certain circumstances, to alter town records ; but none of them compare with this ; and I believe none can be found, where an *ex parte* alteration has ever been sanctioned, unless upon what courts have believed to be equivalent to the certain recollection of the clerk.

A record of a municipal corporation, certainly when made under the influence and sanction of an official oath, imparts as much truth and certainty, as a simple contract in writing, and as much as a deed under seal ; but these cannot, in a collateral way, be altered or impaired, by any parol evidence or representations of witnesses, not even when such representations are made by witnesses under oath, much less by the mere unattested representations of *even respectable men.*

But this alteration is justified, because it is said to be ac-

cording to the truth. *Non constat.* This is the very thing in dispute ; and the plaintiffs complain here, that these parol representations have been permitted to controul the true original record, of which they had been furnished with a certified copy. Parol evidence is often offered to controul a written contract, in the same collateral way ; and is always offered to change or alter it, as in this case, according to the truth ; but it is always rejected. Suppose a party, or a stranger, had altered a written contract ; and, in an action upon it, should offer evidence that it was only altered according to the truth, and should offer parol evidence to prove it ; would it be admitted, on this ground, or any other? Nobody will claim this. But, in the present case, witnesses were offered, and admitted, to prove, that this record was altered according to the facts of the case ; and as well may they be admitted in all cases where a party seeks to break down written securities, by parol evidence. He has only to alter them, and then prove they were altered according to the truth.

To prove the acts of municipal corporations, acts of legislation, &c., we require a certified copy of the records ; but why do we require this, if verbal declarations are of equal certainty, and indeed controuling proof?

Suppose, in the present case, the contract in question, instead of assuming the form of a corporate vote, had been executed by the plaintiffs, on one part, and an authorized agent of the town of *Pomfret,* on the other ; would parol declarations, or parol proof, have been admitted, to show what the defendants now claim to prove?

If, then, a corporate vote, duly recorded by a sworn clerk, is of equal verity with a simple contract in writing, the declarations of witnesses, made to the clerk, without oath, and the parol testimony of witnesses admitted in court, were improperly received and heard.

The defendants have referred us to authorities, which prove, that an alteration cannot be made in a town record, by a former clerk, not now in office. But why not, if the propriety of the alteration depends upon the fact whether it conforms to the truth of the case? It can then make no difference, whether the alteration be made by a clerk in or out of office, or even by a stranger.

I am persuaded that a material alteration cannot be made in any record, by the mere *ex parte* act of the clerk, unless it be made under the sanction and influence of his official oath; an oath, if I mistake not, which requires him to make a true record, not of what he has heard, and therefore believes, but of what he knows officially; and this principle, I think, is very clearly recognized, by the court, in the case of *Hartwell* v. *Littleton*, 13 *Pick.* 229. cited by the defendants.

The question was put in argument; must a party suffer by a mistake, or the neglect of a clerk, and is there no remedy? Yes, there is a remedy, a plain one, and such an one as is resorted to every day, in cases of mistakes or omissions in deeds, or other written instruments, and where they do not express the truth of the case; but this is not by permitting a party, or any body else, to alter them, but by an application to a court of equity, or in cases of records, by *mandamus*, in which the parties in interest can be heard upon the very question, and the deed or the record be set right, by authority of law, and not by any unauthorized individual. This is the only way, as it seems to me, in which justice can be done, titles and rights protected, and the analogies of the law preserved.

In the case of *Wilkie* v. *Hall*, it was said, that the amendment was made too late, because nearly five years had elapsed from the time the officer had made his return, which he attempted to alter. In the present case, the same thing is true.

HINMAN, J. was of the same opinion.

New trial not to be granted.