## County of Schuyler and Commissioners of Highways of Brooklyn Township, Appellees, v. Missouri Bridge & Iron Company, Appellant.

1. APPEALS AND ERRORS—*when evidence may be reviewed.* Where the bill of exceptions shows that an exception was made to the finding and entry of the judgment, the appellate court may review the evidence, to determine the sufficiency thereof, although there were no propositions of law submitted.

2. APPEALS AND ERRORS—*presumption of exclusion of incompetent evidence.* Where evidence, subsequently found to be incompetent, is admitted subject to an objection, it will be presumed, on appeal, that the court rejected the same, where there is sufficient competent evidence to sustain the judgment.

3. MUNICIPAL CORPORATIONS—*amendment of records.* A clerk may amend the record of a municipal corporation, according to his knowledge of the truth, so long as he has the custody thereof, al-

though he was not continuously in office, and such amendment was made after reappointment.

4. MUNICIPAL CORPORATIONS—*amendment of records.* A clerk may amend the record of a municipal corporation, according to the truth, without the necessity of some memorandum, or the direction of the officer whose actions were recorded by such record.

5. MUNICIPAL CORPORATIONS—*amendment of records.* The finding of the trial judge, that a clerk of a board of highway commissioners had an independent recollection of certain proceedings recorded in a record amended by him, is sustained by the evidence where it tends to show, that although an attorney furnished typewritten statements, from which the amendments were made, he received his data from the clerk.

6. ROADS AND BRIDGES—*records of commissioners.* Where all the meetings of the highway commissioners are proceedings on the same subject, such proceedings comprise but one record, and a signature by the president at the last meeting is a sufficient signing, under Chap. 121, Sec. 10, R. S., requiring that all records of the commissioners shall be signed by the president of the board, so as to make the records admissible in evidence.

7. ROADS AND BRIDGES—*petition for county aid.* Where the petition to the board of supervisors for aid in building a bridge is referred to a committee, as required by Sec. 19, Chap. 121 R. S., the fact that such committee is also a standing committee on roads and bridges is immaterial.

8. ROADS AND BRIDGES—*county aid.* Where a petition to the board of supervisors for aid in building a bridge is referred to a standing committee on roads and bridges, appointment of a new standing committee does not take away the jurisdiction of the old committee to act in regard to such petition.

9. ROADS AND BRIDGES—*county aid.* Under sec. 110 of the Road and Bridge Act of 1879, it was necessary, or a condition precedent to asking aid of the county toward building a bridge, that the records of the highway commissioners show their determination as to the necessity for the bridge; that its construction would be an unreasonable burden on the town, that the cost would exceed such sum as could be raised in one year by ordinary taxation for that purpose, and that one-half the necessary fund had been provided by the town.

10. ROADS AND BRIDGES—*county aid.* Section 110 of the Road and Bridge Act, as amended by the Act of June 17, 1891, only requires as a condition precedent to asking aid of the county toward building a bridge that the records show the necessity thereof, and that the cost will be more than twenty cents on the one hundred dollars on the latest assessment roll, and that the road and bridge tax for two years last past in said town was for the full amount of forty

cents on the one hundred dollars allowed by law, the major part of which was needed for ordinary repair of roads and bridges.

11. Roads and bridges—*contracts.* In a suit for the breach of a contract to build a bridge, defendant cannot complain that the plans were not attached to the contract as provided therein and that they were not filed with the contract set out in the declaration, where a copy of such plans was attached to the contract at the time of the letting, and were not objected to.

12. Damages—*breach of contract to build bridge.* Where the lowest bidder at the letting of a public contract to build a bridge refuses to perform, the amount of damages in a suit for such breach is the difference between the defendant's bid and the amount of the subsequent letting.

Appeal from the Circuit Court of St. Clair county; the Hon. W. E. Hadley, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed April 12, 1912. Rehearing denied June 13, 1912.

Bishop & Cobbs and D. J. Sullivan, for appellant.

Herman H. Brown, George B. Steele and B. O. Willard, for appellees; F. J. Tecklenburg, of counsel.

Mr. Justice Shirley delivered the opinion of the court.

Considerable space in appellees' brief is devoted to a discussion of the alleged failure of appellant to except to the judgment of the court, and as there were no propositions of law submitted it is insisted this court cannot review the questions whether the judgment is supported by the evidence, or whether the court applied rules of law. As the record comes to us we find in the bill of exceptions an exception to the finding and entry of the judgment, and we may determine the sufficiency of the evidence to sustain it.

This was a suit by appellees to recover damages for an alleged breach of contract to build a bridge. The declaration declared specially for the breach of the contract, and also upon the common counts. The parties waived a jury; the trial was had before the

court, all proper pleas being regarded as in by a stipulation, and there was a finding and judgment in favor of appellees for the sum of nine hundred and five dollars.

The errors assigned and complained of are that the court erred in passing upon the admissibility of evidence, and in its finding and judgment in favor of appellees.

On June 18, 1909, as appears from the evidence, appellant entered into a written agreement with appellees to erect the bridge ready for travel (except the earth approaches or fills), and to complete it by September 20, 1909, for which it was to be paid in cash on completion the sum of three thousand and ninety-five dollars. The agreement was signed by appellant by its agent R. R. Kilgore, and on behalf of appellees by Amos L. Curry, Wm. J. Thompson and J. F. Bartlow, committee of the Board of Supervisors, and W. H. Fowler, C. C. Russell and Chas. Barrett, Commissioners.

On June 29, Appellant sent to Mr. Curry the following letter:

"St. Louis, Mo., June 29th, 1909.
MR. AMOS CURRY, R. F. D., Frederick, Ill.

DEAR SIR:—Mr. Kilgore made a mistake in his figures in figuring on your work on June 18th. He is so low that this company does not feel justified in accepting the contract. We cannot, therefore, give bond, and we are returning the contract herewith.

Can you not give the contract to the next bidder, whoever that may be, and thus save another letting? If you cannot, we do not want you to lose anything on our account, and we will pay the expenses of another meeting, which I presume will be in the neighborhood of $15.00 to $17.00. Or we will take the contract at $3,350.00 and allow the expenses of another meeting to ratify it.

We are awfully sorry that this has happened, but we do not want to take the job and lose money on it, and we do not believe that you want us to do *so*. I hope

you can see your way clear to let us have the contract at $3,350.00. It is worth more money to do the work, but we are willing to do it cheap, inasmuch as Mr. Kilgore made this mistake.

(Signed)    Mo. BRIDGE AND IRON Co.,
Per J. G. Garrett, Pres.''

Subsequently appellees let the contract to build the bridge to the Springfield Bridge Company for four thousand dollars. This company built the bridge at that price, and this suit was brought to recover the difference between the price so paid, and the amount fixed by the agreement of appellant.

The court admitted evidence offered by appellees over the objection of appellant, subject to the objection. If there was sufficient competent evidence to sustain the judgment it will be presumed the court rejected the incompetent evidence, and there was no error in admitting it. To show the contract sued on was legally authorized to be entered into by appellees, the records of the proceedings of the Highway Commissioners and the Bridge Committee of the Board of Supervisors were introduced in evidence by appellees over appellant's objection. The records of the Board of Supervisors recited that on March 9, 1909, the Board received a petition from the Commissioners for aid in building a bridge in Brooklyn township, which was referred to the standing committee on roads and bridges with power to act; that on June 11th following, the Board appointed a new standing committee on roads and bridges. On the same day two of the members of the old standing committee reported that after meeting the Commissioners they had decided to build a bridge, and that on June 18, the old committee let the contract to appellant to construct the bridge.

The original records of the Commissioners made preliminary to asking the County Board for aid were defective, and to cure the defects in the original records, appellees introduced in evidence what purported

to be the amended records of the commissioners. These amended records were made by the same person who was clerk at the time of the making of the original records. This clerk meanwhile had been succeeded by another clerk, but shortly before the trial of this cause his successor resigned, and he was appointed to fill the vacancy, and new Commissioners had been elected. A clerk may amend the record of a municipal corporation so long as he has the custody thereof according to his knowledge of the truth. (Ryder's Estate v. City of Alton, 175 Ill. 94.) And this he may do while in office or after a re-election to the same office. (Dillon's Mun. Corp. 294.)

It is true as contended by appellant that the validity of the contract depends upon the sufficiency of the records introduced in evidence, and it is urged that the evidence does not show they were valid and regular. We do not agree with counsel for appellant that the record can only be amended by the authority of the parties who took the original action, or that it must be made from some official memorandum of that action. The clerk's right to amend does not depend upon the direction of the Commissioners, and it is immaterial whether there were new Commissioners or whether they directed him to make it. Nor is it necessary he should have some memorandum to amend from. The clerk as custodian and keeper may, and he has the right under the power derived from his official character, to amend the record according to the truth without direction. (Dillon Mun. Corp. 294, 295, 296.)

It is claimed here that the clerk could not amend according to the truth because he had no independent recollection of the proceedings, and because there was no official memorandum to make the amendments by.

The evidence of the clerk on this point is, that by direction of the new Commissioners he with one of the attorneys for appellees amended the records so they would be all right, and that he was furnished a type-

written statement of the amendments to be made by the attorney which he used in writing up the amended records, but while such aid was furnished him, and while he makes statements in connection with the proceeding that leave some doubt whether he had any independent recollection so he could record the truth, or whether he took the attorney's statement for his data, yet he testified that the attorney helped him amend the record; that the statement was dictated by the attorney under his direction, and from his statement of the facts, and further says that the amended records speak the truth. We would not be justified in holding adversely to the trial judge that the amendments were not properly made.

Chap. 121, Sec. 10 Rev. Statutes, requires that all records of the Commissioners shall be signed by the president of the Board, and this is necessary to make the records admissible in evidence. (Gillett v. Taylor, 48 Ill. App. 403.) It is urged the records here were not so signed. This is a misapprehension. The original and amended records recite the original petition of March 8, 1909, the proceedings on the petition on February 23 and March 6, 1909, and a further meeting on April 1, 1909, reciting a joint meeting of the Commissioners and the Committee of the Board of Supervisors at which it was voted to build the bridge and to let the contract, after which appears the signature of the President of the Board. All these meetings were proceedings upon the same subject, and the signature at the last meeting was a sufficient signing by the President, as the proceedings on the several days comprised but one record.

It is further contended that the petition to the Supervisors for aid was referred to a standing committee to represent the county in the matter of petitions asking for aid; that this was not authorized by law, and that the Statute contemplates the appointment of a special committee none of whom reside in the town asking for aid. Sec. 19, Chap. 121, Rev. Stat.

provides that when the petition for aid is presented to the board it shall appoint three members of the board none of whom shall reside in the town to represent the County in the matter. In this case there was a standing committee composed of three members to which the petition was referred with power to act. The law does not provide for a standing committee, and this was in effect referring the matter to three members of the board, and it was immaterial that they had been appointed a standing committee. They had jurisdiction as members of the board to act.

Before the contract was let on June 18th, a new standing committee was appointed by the board but the old committee acted in letting and signing the contract, and for this reason it is claimed the old committee had lost jurisdiction. As the matter had been referred to the old committee they were still the committee as members of the board, and it was not material that a "standing" committee consisting of other members had been appointed on roads and bridges.

It is further contended that it was necessary as a condition precedent to asking aid of the county that the records of the commissioners should show that they had determined that a necessity existed for the bridge; that its construction would be an unreasonable burden on the town; that the cost would exceed such sum as could be raised in one year by ordinary taxation for that purpose in the town and that one-half the necessary fund had been provided by the town. Under Sec. 110 of the road and bridge act of 1879 these conditions were necessary before aid could be furnished by the county and it was held in the case of the People v. Madison County, 125 Ill. 334, that these facts under such section of the statute were jurisdictional and must appear to have been found by the record.

Section 110, *supra,* was amended by the Act of June 17, 1891, and this proceeding was under the amended act. Sec. 19 of the act provided in substance that

when it is necessary to construct a bridge, in which work the town is wholly or in part responsible, and the cost of which will be more than twenty cents on the one hundred dollars on the latest assessment roll and the road and bridge tax for two years last past in said town was for the full amount of forty cents on the one hundred dollars allowed by law for the commissioners to raise, the major part of which is needed for the ordinary repair of roads and bridges, the commissioners may petition the County Board for aid, and if the foregoing facts appear the County shall furnish one-half the cost.

An examination of the original and amended records shows that all the jurisdictional facts required by this section of the Statute were found and made a matter of record, the contract was therefore legally authorized and was not void for want of mutuality.

Complaint is made that the contract provides for a bridge "according to plans and specifications hereunto attached and made part of this contract," and that the plans were not attached and filed with the contract set out in the declaration, and were copies and are not sufficient to show how the bridge was to be built. The evidence shows the plans were present when appellant's agent bid. No objection was made to them then, and appellant does not base its refusal to perform on the ground it did not see or understand the plans.

After appellant refused to build the bridge the evidence shows that ten days' notice was given to again let the contract, and three bridge companies were present and bid to build a bridge upon the same plans and specifications upon which appellant had bid, and the contract was let to the lowest bidder for $4,000. Appellant did not bid at that letting. It was appellant's duty to protect itself at that letting if the bid of $4,000 was too high, and not having done so it cannot complain.

The measure of damages was the difference between appellant's bid and the amount of the subsequent let-

ting for which the bridge was built. This was the measure fixed by the court.

Perceiving no error the judgment of the Circuit Court is affirmed.

*Affirmed.*