THE STATE EX REL. WILLIAM R. COMPTON COMPANY v. LEN WALTER, Appellant.—23 S. W. (2d) 167.

Division One, December 30, 1929.

*Culver, Phillips & Voorhees* and *Mayer, Conkling & Sprague* for appellant.

*Benjamin H. Charles* and *John T. Barker* for respondent.

294

FRANK, J.—This is a proceeding in mandamus instituted in the Circuit Court of Holt County by relator against appellant Len Walter, as secretary of the board of supervisors of Corning Levee District, to compel him to record in the record book of said district the minutes of a meeting of said board alleged to have been held on April 11, 1922. An alternative writ was issued by the circuit court. On final hearing the alternative writ was made peremptory and defendant appealed.

The record shows the board of supervisors of Corning Levee District on March 24, 1922, entered into a contract with Woods Brothers Construction Company for the construction of retards and other improvements in said district for the purpose of protecting the lands in the district from the ravages of the Missouri River. Later the board issued bonds of the district in the sum of $100,000, sold them for par and accrued interest, and used the money derived from the sale of the bonds to pay for said work. The bonds were executed by the proper officers of the district, duly registered by the State Auditor and sold to Woods Brothers, who in turn sold them to relator, William R. Compton Company.

It is relator's contention that the board of supervisors met on April 11, 1922, and on that date duly passed two resolutions, one authorizing the issue of the bonds, the other levying a tax to pay the principal and interest of said bonds, but that appellant, as secretary of said board of supervisors, failed and refused to record the proceedings of the meeting showing the adoption of said resolutions. This proceeding was brought to compel him to make such a record.

Appellant's first contention is that it was the statutory duty of the board of supervisors and not the secretary, to keep a record of its proceedings, and for that reason mandamus will not lie against the secretary to compel him to record proceedings of the board alleged to have been had on April 11, 1922.

Sections 4605 and 4625, Revised Statutes 1919, are cited in support of this contention. These sections respectively provide as follows:

"Such board shall adopt a seal with a suitable device, and shall keep a record of all its proceedings . . ."

"The board of supervisors . . . shall cause to be kept in a well bound book, entitled 'Record of board of supervisors of ———— District,' in which shall be recorded minutes of all meetings, proceedings, certificates, bonds given by all employees and any and all corporate acts, . . ."

While Section 4605 requires the board of supervisors to keep a record of its proceedings, and Section 4625 requires it *to cause* such a record to be kept, these statutes do not necessarily mean that some member of the board must perform the physical act of recording such proceedings. Other provisions of the statute defining the duties of the secretary of the board unmistakably show that it was the intent of the Legislature that the secretary of the board should perform the ministerial act of recording the doings and proceedings of the board. Section 4605 provides that the board shall elect some suitable person as secretary. Section 4607 enacts that "the plan for reclamation" adopted by the board shall be filed with the secretary of the board *and by him copied into the records of the district.* Section 4609 provides that the secretary shall prepare and transmit to the circuit clerk of the court organizing the levee district a certified copy of the plan of reclamation. Section 4610 provides that: "Said circuit clerk upon the filing of said order of appointment shall notify each of said commissioners of his appointment by written or printed notice, and in the same notice he shall state the time and place for the first meeting of said commissioners. The secretary of the board of supervisors or his deputy shall attend such meeting. and shall furnish to said commissioners a complete list of lands, all corporate and other property described in the articles of association or adjacent thereto that will be affected by carrying out and putting into force 'the plan for reclamation,' and the names of the owners of such property, as were contained in the articles of association, at the date of the final decree of the court incorporating the district. Said secretary shall also furnish said commissioners a copy of 'the plan for reclamation,' with maps and profiles in his office."

Section 4611 directs that: "The secretary of the board of supervisors, or his deputy, shall accompany said commissioners while engaged in their duties, and shall perform all clerical work of said board; he shall also under the advice, supervision and direction of the attorney for the district, prepare their report,"

Section 4615 provides: "The secretary of the board of supervisors, as soon as said total tax is levied, shall, at the expense of the district, prepare a list of all taxes levied, in the form of a well bound book, which book shall be indorsed and named 'levee tax record of ———— levee district ————,' . . . and shall be signed and certified by the president and secretary of the board of supervisors, attested by the seal of the district, and the same shall thereafter become a permanent record in the office of said secretary."

Section 4620, after providing the form of certificate concerning the tax levy, makes the following further provision: "The certificates and table specified in this section shall be prepared in a well bound book and filed in the office of each of the recorders of the counties having lands in said district as the same may affect the land or other property in his county, where the same shall become a permanent record of the office. The said book or books shall be prepared by the secretary of the board of supervisors at the expense of the levee district, . . ."

Section 4617 makes the secretary custodian of the collector's bond and further provides that the secretary, by virtue of his office, shall be *ex officio* treasurer of the district.

It would be impractical, if not impossible, for the secretary of the board to perform the duties enjoined upon him by statute if he were not the keeper and custodian of the records of the district. It is true that the statute does not, in express terms, say that the secretary shall record the proceedings of the board, but such duty results from a fair and reasonable interpretation of the statutes. We therefore hold that it was the statutory, ministerial duty of appellant, as secretary of the board of supervisors to make and keep a record of the proceedings of the board. As regards the writ of mandamus to compel the performance of such a duty, 19 Ruling Case Law, page 903, sec. 202, states the rule thus;

"The only remedy of a person who suffers some private injury by the insufficiency or inaccuracy of a record is by writ of mandamus to compel the record to be amplified or corrected."

In 2 Bailey on Habeas Corpus and Special Remedies, page 985, the author, speaking of mandamus to compel the recording of certain proceedings says: "The rule extends to town clerks, city clerks, and those who have similar duties to perform with respect to filing or recording papers. A town clerk may be compelled *to record the proceedings of a town meeting* and to amend and correct his records to conform to the facts." (Italics ours.)

In 38 Corpus Juris, page 739, sec. 348, it is said: "A public board or a city council may be compelled to make a record of its proceedings or to correct such record; and likewise *an officer charged*

*with the duty of keeping such records may be compelled to make and amend them.''* (Italics ours.)

In High on Extraordinary Remedies (3 Ed.) page 322, sec. 329a, the author says of the writ: ''Mandamus is also employed for the purpose of correcting errors in the records of the proceedings of municipal bodies. Thus, it will go to the clerk of a common council of a city to correct an inaccurate record of the council proceedings, kept by such clerk in his official capacity, upon the application of one who is especially interested in having such correction made.''

Appellant cites Wigginton v. Markley, 52 Cal. 411; White v. Burkett, 21 N. E. (Ind.) 1087; Samis v. King, 40 Conn. 298; Mann v. City of LaMars, 109 Iowa, 251, 80 N. W. 327; State ex rel. v. Hackmann, 277 Mo. 56, 63; Congregation v. Bordentown, 56 N. J. L. 48, 27 Atl. 799; Bolton v. McKelvey, 247 Pa. St. 585, 93 Atl. 613, in support of his contention that this proceeding should have been brought against the board of supervisors instead of the secretary because it is the statutory duty of the board to keep the record, and because the secretary has no authority to correct or change the record as made by the board.

This is not a proceeding to compel the secretary to either correct or change a record. There is a wide difference between making a record and correcting or changing a record already made. The facts in this case are that no record of any kind was made of the proceedings had by the board of supervisors at their meeting on April 11, 1922, at which meeting, it is alleged the resolutions in question were passed. This is a proceeding to compel the secretary to make such a record. If, as we have already held, it was the statutory ministerial duty of the secretary to make such record, the question whether the board or the secretary had authority to correct or change a record, would not alter the statutory duty of the secretary to make the record in the first instance, or relieve him from the performance of that duty. A writ of mandamus should run to the person whose duty it is to perform the act required. It being the statutory duty of appellant, as secretary of the board to make and keep a record of the board's proceedings, this suit was properly brought against him.

It is next contended that the court erred in directing the secretary to record the proceedings alleged to have been had by the board on April 11, 1922, because there was nothing of record and no minutes of any kind upon which to base an entry *nunc pro tunc* correcting or changing the record of the board. The contention being that as the statute requires a record of the proceedings of the board to be kept, such proceedings cannot be proved in the absence of some record, minute or journal entry offered in evidence as the basis for parol testimony of such proceedings.

A somewhat similar question was before the Appellate Court of Illinois in the County of Schuyler and Commissioners of Highways of Brooklyn Township v. Missouri Bridge & Iron Company, 173 Ill. App. 435, 440. It is there said:

"A clerk may amend the record of a municipal corporation so long as he has the custody thereof according to his knowledge of the truth. [Ryder's Estate v. City of Alton, 175 Ill. 94.] And this he may do while in office or after a re-election to the same office. [Dillon's Mun. Corp. 294.]

"It is true as contended by appellant that the validity of the contract depends upon the sufficiency of the records introduced in evidence, and it is urged that the evidence does not show they were valid and regular. We do not agree with counsel for appellant that the record can only be amended by the authority of the parties who took the original action, or that it must be made from some official memorandum of that action. The clerk's right to amend does not depend upon the direction of the Commissioners, and it is immaterial whether there were new Commissioners or whether they directed him to make it. Nor is it necessary he should have some memorandum to amend from. The clerk as custodian and keeper may, and he has the right under the power derived from his official character, to amend the record according to the truth without direction. [Dillon Mun. Corp. 294, 295, 296.]"

If a clerk may without direction lawfully amend the records of a municipal corporation according to the truth although he has no memorandum from which the amendment could be made, it must follow, that under similar circumstances, he could be coerced by mandamus to make the record speak the truth, either by recording that which he had failed to record or correcting that which he had incorrectly recorded. Our own courts have recognized that the strict and technical rules which apply to the correction of judicial records, do not apply to the correction of municipal records. In State ex rel. School District No. 1 v. Hackmann, 209 S. W. 92, 277 Mo. 56, 64, we quoted with approval from Boston Turnpike Company v. Town of Pomfret, 20 Conn. 590, 596, the following:

"Courts, however, have never adopted, and from their nature it would not be practicable to adopt, those strict, technical and peculiar rules as to their correction, which apply to the amendment of judicial records. On the contrary, it is deemed of so great importance to uphold the proceedings of our municipal corporations, that courts are disposed to be as indulgent in allowing entries of their proceedings to be amended, as is consistent with the safety of those whose interests would be affected by them."

Appellant cites State ex rel. Barkwell v. Trimble, 309 Mo. 546. 274 S. W. 683, and City of Brunswick v. Scott, 275 S. W. 994, in support of his contention that parol evidence was not admissible

to prove the passage of the resolutions in question by the board of supervisors. These cases were suits to recover on special tax bills. The defense was that the work for which the tax bills were issued was not completed within the time specified in the contract. . To meet this defense, plaintiffs offered to show by parol testimony that the city council passed an ordinance extending the time in which the work might be completed, and that it was completed within the time so extended. The court held in these cases, and correctly so, that the passage of the extension ordinance could not be proved by parol testimony on the ground that the record of the city council showing the passage of the ordinance would be the best evidence. There is, however, no intimation in these cases that the plaintiffs therein could not have compelled the city clerk to make a record of the passage of the extension ordinance, if in fact it had been passed, then in the suit to recover on the tax bills, use the record so made to prove the passage of said ordinance.

The rule is well settled that where the statute requires a municipal corporation to keep a record of its corporate acts, such acts, when called in question in a *collateral proceeding,* can be shown only by the records of the corporation, but where, as in this case, the secretary of the board failed to make a record of certain proceedings had by the board, and a *direct proceeding* is brought against him to compel him to make such a record, the best-evidence rule is not violated by the introduction of parol evidence to prove what the board actually did, because in such circumstances, parol evidence is not only the best evidence, but is the only evidence by which the action of the board could be shown. Any other holding would place the secretary or clerk of a municipal corporation beyond the reach of the courts, and thus enable him to invalidate the acts of the corporation and destroy rights of third parties who in good faith invested money because of certain corporate proceedings, by purposely refusing or negligently failing to make a record of such proceedings.

It is next contended that the findings of the court are not supported by any evidence. The first claim in this regard is that the evidence shows that the alleged resolutions authorizing the issue of the bonds and the levy of a tax to pay the principal and interest thereof were not adopted by the board of supervisors.

We cannot see the force of this claim. Lee Metcalf, an employee and representative of Woods Brothers Construction Company, testified that he frequently attended meetings of the board of supervisors; that at a meeting of the board prior to the one held on April 11, 1922, it was suggested that a bond and tax resolution be prepared; that he prepared such resolutions and presented them to the board of supervisors at their meeting held on April 11, 1922,

and they were adopted by the board at this meeing. Later, on April 17, 1922, appellant as secretary of the district, officially certified under his hand and the seal of the district that these resolutions were passed and adopted by the board of supervisors, at said meeting.

Opposed to this evidence is that given by E. A. and A. J. Roselius, members of the board of supervisors, and appellant, Len Walter, secretary of the district. A. J. Roselius did not appear to have any definite idea as to what action the board took with reference to the bond issue. The substance of his evidence is that he recalled in a general way that the board had a meeting at which it voted to issue bonds and make a tax levy; that he did not think the written resolutions were before the board; that he thought the action was taken on an oral motion; that he thought the motions were made and then it was left to the attorneys to draw them up in legal form; that he saw the resolutions afterward and thought they were presented to him by Mr. Metcalf, but that he did not remember of any meeting of the board held thereafter at which the resolutions were passed.

E. A. Roselius testified that Metcalf came to the meeting of the board with resolutions already prepared which were submitted to and examined by the board, and adopted with some modifications, at the meeting held in April, 1922, at the home of Alice Walter, in the district. Concerning this meeting, this witness further testified:

"Q. And at that meeting, preliminary steps were taken to issue and sell a hundred thousand dollars' worth of bonds of the district? A. Yes, sir.

"Q. And the levy of taxes sufficient to pay the principal of the bonds at maturity, and the interest when it fell due? A. Yes, sir.

"Q. At that session some resolutions were offered and adopted, were they not? A. Yes, sir.

"Q. Did you offer and move the adoption of any resolution at that meeting? A. Yes, sir."

Concerning the tax resolution which Metcalf testified the board adopted, this witness testified:

"Q. Did you offer that resolution? A. I never made that long a resolution; I couldn't if I wanted to.

"Q. Somebody prepared it for you? A. I didn't see it. I made the resolution to issue bonds and pay the interest.

"Q. Did you know the provisions with reference to levying taxes by the board of supervisors in which they tried to make a valid tax levy and a valid issue of bonds? A. We had our attorneys do that for us."

He further testified that it was his intention to make a valid tax levy and if he failed in so doing, it was a mistake of the head and not of the heart.

Len Walter, the secretary, denied that the resolutions in question were adopted by the board, yet his own evidence shows that he officially certified that they were duly adopted, and that he signed the bonds that were issued, and later as *ex officio* treasurer of the district received and paid out the money realized from the sale of the bonds.

The evidence of relator's witness, Metcalf, to the effect that the resolutions were adopted by the board was positive and substantial. The fact that the secretary of the board officially certified that the resolutions were duly passed by the board, and the further fact as testified to by E. A. Roselius that Metcalf brought resolutions to the meeting in question, already prepared, and which the board adopted with some modifications, tended to corroborate the evidence of witness Metcalf that the resolutions were adopted. It is true that appellant's witnesses denied that the resolutions in question were adopted, but that denial was not conclusive on the court. The whole evidence touching the question of the adoption of the resolutions presented an issue of fact for the trial court's determination. Appellant's contention that the evidence showed that the resolutions were not adopted is disallowed.

It is next contended that, although the treasurer delivered the bonds to an agent of Woods Brothers, he had not sold them to Woods Brothers at the instance and request of the board. In this connection it is also contended that there was no evidence that the board by order, resolution or motion ever directed the treasurer or any other person to issue or sell the bonds of the district, or fixed the quantities to be sold or dates for the sale thereof as provided by Section 4638, Revised Statutes 1919.

Section 4638 of our statutes does provide that the treasurer shall sell the bonds in such quantities and at such dates as the board of supervisors may deem necessary to meet the payments for the work and improvements in the district. As we read the record the board of supervisors complied with this provision of the statute. The resolution which the board adopted, among other things makes the following provision:

"Now, therefore, be it resolved and ordered by the board of supervisors of the Corning Levee District, that there shall be and there is hereby ordered to be issued without delay, the bonds of said levee district in the total sum of one hundred thousand dollars."

The words "to be issued" as used in the resolution, mean to be delivered to the purchaser, and the words "without delay" as used

therein mean, at once. Webster defines the *issue* of a negotiable instrument as the first delivery of the instrument, as a bill or note complete in form, to a person who takes it as a holder.

In Folks v. Yost, 54 Mo. App. 55, 59, the Kansas City Court of Appeals defined the word *"issued"* as meaning, delivered to the holder. That was a suit to enforce the lien of a special tax bill. Defendants contended that when the tax bill was made out and certified to by the city engineer, it was then issued regardless of the time it was delivered to the contractor, while plaintiff insisted that the tax bill was not *issued* until delivered to the contractor. The court disposed of the contentions there made in the following language:

"The ordinary and commonly accepted meaning of 'to issue' is to send forth, to put into circulation, to emit, as to issue bank notes, bonds, etc. [Anderson's Law Dictionary, 569; Webster's Dictionary.] To issue tax bills then, as ordinarily understood, necessarily includes delivery to some one; just as municipal bonds may be written out or printed and signed, but they are not issued until sent out, delivered or put into circulation."

In Klutts v. Jones, 148 Pac. 494, 499, 20 N. M. 230, the court defined the verb "to issue" thus:

"The verb 'to issue' means to emit or send forth, and it does not embrace the preliminary acts of calling and holding the election, or signing and dating the bonds, but is confined to the delivery, unless the context of the statute requires that a different meaning should be accorded to the words."

There is nothing in the context of the statute governing this case to indicate an intention on the part of the Legislature to use the word *issue* in any other or different sense than it is usually and ordinarily understood and used. Note the language of the statute. Section 4638, Revised Statutes 1919, first empowers the board of supervisors to *issue bonds* when in their judgment it seems best. If the statute stopped with this provision, there could be no question but what the Legislature used the words *"issue bonds"* as meaning to put the bonds in circulation by delivering them to the purchaser, because authority to issue bonds means authority to raise money by that means. The remaining part of this section of the statute which directs how the bonds shall be executed and placed in the hands of the treasurer for sale, does not use the words "issue" or "issued." This part of the statute reads: "which said bonds shall be signed by the president of the board of supervisors, attested with the seal of said district and by the signature of the secretary of the said board. All of said bonds shall be executed and delivered to the treasurer of said district, who shall sell the same in such quantities and at such dates as the board of super-

visors may deem necessary to meet the payments for the works and improvements in the district.''

The fact that the Legislature used the words ''issue bonds'' when conferring authority on the board of supervisors to raise money in that manner, but used other and different words when directing what officers should prepare and execute the bonds, and the manner in which they should be executed clearly shows that the Legislature used the words ''issue bonds'' in the sense of placing the bonds in circulation by sale and delivery to the purchaser, and not in the sense of preparing and signing the bonds and placing them in the hands of the treasurer for sale. We recognize that the Legislature could have used the words ''issue bonds'' as meaning preparing them for sale; but it did not do so in this instance.

It therefore follows that the adoption of a resolution by the board of supervisors to the effect that ''there shall be and there is hereby *ordered to be issued without delay* the bonds of said levee district in the total sum of *one hundred thousand dollars*,'' was a direction from the board to the treasurer to sell the entire issue at once, and was a compliance with Section 4638 of the statute which provides that said bonds shall be executed and delivered to the treasurer of the district, who shall sell the same in such quantities and at such dates as the board of supervisors may deem necessary. It was not necessary that the board specifically designate the treasurer as the person who should sell the bonds because the statutes make it his duty to sell them, leaving to the discretion of the board the quantities to be sold, and the dates when the sale should be made. The board exercised that discretion by adopting a resolution which ordered that the entire issue be sold without delay.

Appellant admits that Woods Brothers sold the bonds to relator but contends that although the treasurer of the district delivered the bonds to an agent of Woods Brothers, he did not sell them to Woods Brothers at the instance and request of the board.

Metcalf, the agent of Woods Brothers, and A. J. Roselius were present when Walter, secretary-treasurer of the district, signed the bonds. Walter testified that he signed the bonds without reading them, did not know why he did not read them, did not know what he was signing nor the purpose for which he was signing them, although he had previously testified that he refused to sign them when they were presented to him the evening before, because he did not think they ought to be signed; because he had heard that Metcalf intended to take them away with him; because the lawyer representing the district had told him that the bonds were to be in his possession when he signed them and he should take them to Jefferson City for registration, and because he did not have sufficient light at his home to see to sign them. He also

testified that he had no negotiations with Metcalf about the sale of the bonds, but Metcalf took them away with him after they were signed.

A. J. Roselius, who was present when Walter signed the bonds testified:

"Q. What was done by the board with reference to having the bonds registered? A. After they were signed they were turned over to Mr. Metcalf.

"Q. Well who turned them over to Mr. Metcalf? A. I don't know whether I did or Mr. Walter.

"Q. Well whichever one of you did why did you do it? A. Well, *we* turned them over to him to take down and have registered.

"Q. Yes, you had sold them to Woods Brothers' Construction Company hadn't you? A. Yes, sir.

"Q. At what price? A. At par and accrued interest."

The evidence justifies the finding that the district sold the bonds to Woods Brothers Construction Company. The statute does not provide that the board shall direct the sale be made to any particular person. The provision is that the bonds when issued shall be delivered to the treasurer who shall sell them in such quantities and at such dates as the board may direct. When the board by resolution directed that the entire issue be sold without delay, it was the statutory duty of the treasurer to sell them to any purchaser who would pay the highest price for them. It was the duty of the treasurer and not the board to make the sale. This contention is ruled against appellant.

It is next contended that the finding of the trial court that the secretary of the board prepared the "Levy Tax Record" of the district was not supported by any evidence. This contention is based on the evidence of witness Metcalf that the "Levy Tax Record" was prepared by an employee of Woods Brothers Construction Company. He also testified that after this record was prepared it was presented to the president of the board of supervisors and the secretary of the district, who both signed it, and the evidence further shows that they, as president and secretary of the board, filed a certified copy thereof with the Recorder of Deeds of Holt County. We are not called upon to decide whether or not a failure to prepare a "Levy Tax Record" would affect the validity of the bonds, because it is shown that such a record was prepared. The mere fact that the work of preparing the record was done by some one other than the secretary of the board, would not affect its validity, where, as here, it is signed and certified by the proper officers of the district as the "Levy Tax Record."

Contention is made that the evidence does not support the trial court's finding that certain proceedings were had in the Circuit Court of Holt County regarding the appointment of commissioners to assess benefits to lands within the district by reason of the adopted plan for reclamation, the qualifications of such commissioners, the report of such commissioners and the approval of said report. Both the petition and the alternative writ allege, and the return to the writ does not deny, that such proceedings were had. All matters well pleaded and not denied by respondent in express terms are admitted to be true. [State ex rel. Rundberg v. Kansas City, 226 S. W. 986; State ex rel. v. Allison, 155 Mo. 325, 328, 56 S. W. 467.]

Further contention is made that the finding of the trial court to the effect that the board on April 11, 1922, levied the sum of $12,567.50 as the annual installment for the year 1922, is not supported by the evidence. This contention is based on the certificate made to the Collector of Holt County by the president and secretary of the board of supervisors that the board levied the sum of $12,558.24 as the annual installment of tax for the year 1922, and the verbal testimony of the president of the board that he thought such levy was made some time in September. Appellant's contention overlooks the fact that the resolution adopted by the board, in express terms, levied the annual installment of tax for the year 1922, in the exact amount and at the time as found by the trial court.

It is next contended that the evidence does not support the finding of the trial court (a) that most of the landowners in the district had refused to pay their levee taxes for the years 1924 and 1925, and (b) that the district had filed a large number of suits against the landowners in the district for delinquent levee taxes due the district. If appellant's contention in this regard were true, it would not affect the issues in this case one way or the other. So we will not discuss it.

The alternative writ alleges the incorporation of the levee district, and all proceedings thereafter had, including the passage of the resolutions in question, looking to the issue of the bonds. These proceedings are quite lengthy and as appellant makes no attack on them except the ones heretofore discussed, it is unnecessary to lengthen this opinion by a reproduction of them.

Although we have not cited and discussed all of the cases to which our attention has been called, we gave them due and careful consideration before reaching a conclusion in this case.

We find no reversible error in the record and, therefore, affirm the judgment. All concur.