THE STATE ex rel. CONSOLIDATED SCHOOL DISTRICT NO. ONE OF MISSISSIPPI AND NEW MADRID COUNTIES v. GEORGE E. HACKMANN, State Auditor.

In Banc, February 15, 1919.

1. **ELECTION: Place of Meeting: Omission in Record: Nunc Pro Tunc Correction.** Where the board of education called a bond election, but its record failed to designate the place, though the secretary's notices stated the election "will be held at the school house," the board had authority after the election was held to

State ex rel. School Dist. No. 1 v. Hackmann.

make its record speak the truth, by making it recite that the election was ordered to be held at the school house; and that having been done the bonds will not be held invalid because of the defect in the record as first made.

2. **CONSOLIDATED SCHOOL DISTRICT**: Indebtedness of Former Districts: Bond Issue. A consolidated school district, formed of parts of existing common school districts whose school house sites are not included in the consolidated district, is not required to assume and pay the bonded indebtedness of said districts; and in calculating the maximum amount of bonds said consolidated school district may issue, the amount of the existing indebtedness of such common school districts should be excluded.

3. ——: ——: Lessening Taxable Ability: Impairment of Contracts: Raised by State Auditor. The State Auditor, when sued at the relation of a consolidated school district to compel him to register its bonds, has no authority to represent the common school districts or their citizens or creditors whose territory was taken in part to form the consolidated district, and for them raise the point that the formation of the consolidated district, by diminishing their territory, lessened their taxable ability to pay existing bonded indebtedness, and thereby impaired their contracts and rendered unconstitutional the statute authorizing the elision and leaving the debts as a burden on the remaining portions of the common school districts. Such a question is not for decision in said mandamus suit.

## Mandamus.

PERMANENT WRIT ISSUED.

*Haw & Brown* for relator; *Charles & Rutherford* of counsel.

(1) The Board of Education having designated the school house in relator district as the place of holding the election, and the secretary of the board having failed to record that fact, the record of the meeting may be afterwards corrected and made to speak the truth. Smith on Munic. Corp. sec. 313, p. 305; Commonwealth v. Scheubmehl, 3 Lack. Leg. N. (Pa.) 186; Ryder's Est. v. City of Alton, 175 Ill. 94; Becker v. City of Henderson, 100 Ky. 450; Everett v. Deal, 148 Ind. 90. (2) A consolidated school district organized

out of territory belonging to two or more common school districts is only required to assume the bonded indebtedness of the district or districts whose school house site or sites have been included within the consolidated school district. Laws 1913, p. 721, sec. 6. (3) If we are right in our last point, then, although the Auditor, as the representative of the taxpayers in the district (Ransom v. City of Pierre, 41 C. C. A. 585, 101 Fed. 665), may, in a proper case, raise constitutional questions affecting their interests, in this case such question cannot be raised because the taxpayers are not interested in, nor affected by, the operation of the statute, and cannot, therefore, assail it as being unconstitutional. State ex rel. v. Gordon, State Auditor, 268 Mo. 734; State ex rel. v. Blake, 241 Mo. 100; State ex rel. v. Williams, 232 Mo. 56; Ex parte House v. Mayes, 227 Mo. 617; Ordelheide v. Modern Brotherhood, 226 Mo. 203; State ex rel. v. McIntosh, 205 Mo. 589; State v. Seebold, 192 Mo. 720. (4) The Legislature may provide for the change of school district boundaries, or the consolidation of districts, even though this may result in imposing old debts upon taxpayers not originally subject thereto, and without their consent by vote or otherwise. Sharp v. Miller, 65 Mo. 50; Thompson v. Board of Education, 61 Mo. 176; Hughes v. School District, 72 Mo. 643; True v. Davis, 133 Ill. 522; Cicero v. Chicago, 182 Ill. 309; Abbott on Public Securities, sec. 17, p. 30. This court has already said that "there is perceived no constitutional objection to the method of consolidation provided by the Act of 1913." State ex rel. v. Jones, 266 Mo. 198.

*Frank W. McAllister,* Attorney-General and *Shrader P. Howell,* Assistant Attorney-General, for respondent.

(1) The Board of Education having failed and neglected to designate, in its order of June 30, 1917, the polling place, the bonds attempted to be authorized

at the election on July 21, 1917, were invalid and void.  Sec. 10879, R. S. 1909;  Laws 1915, p. 386; Martin v. Bennett, 139 Mo. App. 237;  Thornburg v. School District, 175 Mo. 12;  State ex rel. v. Martin, 83 Mo. App. 55.  A *nunc pro tunc* entry cannot be based on parole evidence, but must be founded on the original documents and recorded minutes which deal directly with the matter sought to be corrected.  Railway v. Halschag, 144 Mo. 253;  Jordan v. School District, 38 Me. 170;  Low v. Pettengill, 12 N. H. 340; 2 McQuillin's Municipal Corporations, sec. 623, p. 1372.   (2) The bonds are invalid and void for the reason that amount of outstanding bonds of the common school districts which were merged into the consolidated district, together with the bonds voted on July 21, 1917, is in excess of five per cent of the assessed valuation of said district, and therefore, violative of Section 12 of Article X of the State Constitution.   (3) The Act of 1913 is violative of Section 10 of Article I of the Constitution of the United States, in that it authorizes and results in the impairment of the obligations of contracts.  Laws 1913, p. 723, sec. 6;  Siebert v. Lewis, 122 U. S. 294;  State v. Young, 29 Minn. 474;  Board of Education v. Railway, 110 Ky. 941;  5 McQuillin's Municipal Corporations, p. 4971, sec. 2373;  Dillon on Municipal Corporations, p. 192, sec. 113.

WOODSON, J.—This is an original proceding by mandamus brought by the relator against the respondent to compel the State Auditor to register bonds in the sum of $5,000 which were authorized by the voters of Consolidated School District No. 1 in Mississippi and New Madrid Counties, Missouri, at an election held July 21, 1917, the proceeds of the bonds to be used for the purchase of a site and the construction of a school house thereon.

The respondent waived the issuance of the alternative writ, and the cause was submitted to the court

60    SUPREME COURT OF MISSOURI,

State ex rel. School Dist. No. 1 v. Hackmann.

upon the petition, which stands as and for the writ, and the return thereto.

The facts as disclosed by the petition and return are as follows:

The Board of Education of the Consolidated School District made an order on the 30th of June, 1917, calling an election at which it should be determined whether the bonds of the district should be issued for the purpose stated above, but the minutes of the board, as set out in the pleadings, failed to show that the place where the election was to be held was designated in said order. It is disclosed by the record, however, that the secretary of the board posted, fifteen days prior to the day of the election, within the limits of said Consolidated District, the required five notices, in each of which it was stated that the election "will be held at the school house in said Consolidated District on Saturday the 21st day of July, 1917."

Thereafter, on March 25, 1918, the Board of Education, recognizing the defect in the order of June 30, 1917, undertook to correct its records by entering an order *nunc pro tunc* in which it is recited that, at the meeting of June 30, 1917, the motion made and adopted, calling the election, included the clause that "the said election to be held in this schoolhouse, being the schoolhouse in said Consolidated School District."

It is further disclosed by the pleadings that the assessed valuation of that portion of the taxable property of the Consolidated District situate in New Madrid County, on June 1, 1914, was $16,320, and the valuation of that part of the district situate in Mississippi County as ascertained by the assessment on the date last above named, was $86,135, thus making a total assessed valuation of $102,455. At the time of voting the bonds in question common school districts numbered 14 and 24, of Mississippi County, which then constituted a part of the Relator Consolidated District, had an outstanding bonded indebtedness aggregating the sum of $4,500, composed of indebtedness of

$3000 against said School District No. 24, and $1500 against said School District No. 14, in Mississippi County, which amount, if to be added to the instant bond issue of $5000 attempted to be authorized by the vote of July 21, 1917, would make a total indebtedness of the Consolidated District of $9500, which is $4377.25 in excess of five per cent of the total assessed valuation of the said Consolidated District.

The $1500 and $3000 indebtedness before mentioned were incurred for the purpose of purchasing a site in each of said school districts, and for the purpose of erecting a school house upon each. The record further shows that neither of these school houses are embraced within the boundaries of the Consolidated District here under consideration.

It further appears from the record that at the election which was called and held on July 21, 1917, a total of forty-seven ballots were cast, forty-five of which were in favor of the proposed bond issue, and two were against the proposition, and that the said Board of Education duly canvassed the return, declared the result thereof, and authorized bonds of the district in the sum of $5000 to be prepared and issued. Thereafter the bonds thus authorized were presented to the State Auditor for registration in conformity with the provisions of the statute, but the registration was refused on the ground that said bonds are invalid and void for various reasons which will be considered in the course of the opinion.

I. Counsel for the respondent try to justify the action of the Auditor in refusing to certify the bonds upon the ground that the Board of Education having failed and neglected to designate in its order of June 30, 1917, the place where the election of July 21st authorizing the issuance of the bonds was to be held, rendered them invalid and void; and in support of that position we are cited to the following statutes and decisions of this court and of

Amended Record.

the Court of Appeals: Sec. 10879, R. S. 1909; Laws 1915, p. 386; Martin v. Bennett, 139 Mo. App. 237; Thornburg v. School District, 175. Mo. 12; State ex rel. v. Martin, 83 Mo. App. 55. These statutes mentioned, in explicit terms, provide that "such election shall be held on the. first Thursday in April of each year, and at such convenient place within the district as the board may designate." These statutes also require the clerk of the board to properly enter the result of the election upon the records of the board.

It would seem that the language quoted is too plain to need judicial construction; however, that provision of the statute has been before this court and the courts of . appeals in the cases previously cited, and it is almost useless to state that the courts held that under that plain mandate of the statute it was the duty of the Board of Education, in calling the election, to designate in the order calling the same the place where the election would be held.

If the foregoing were all of the facts that are disclosed by the records of the school board regarding the bond election, then unquestionably, under the authority of the cases cited, we would be compelled to hold the election void, and consequently the bonds also which were issued in pursuance thereto; but fortunately for the school district, the records of the board also show by the amendment of the record heretofore mentioned in the return of the respondents, that the order calling the election did designate the place where it would be held, but through inadvertence or oversight, the clerk at the time of recording the call omitted to enter upon the records the place designated by the board.

While counsel for neither party have cited any case in this State where the precise point here presented has been decided, namely, that the clerk has or has not the authority under the law to make the amendment and thereby make the record speak the truth, yet the text-writers and the adjudged cases from other states are so uniform in holding the clerk has such power, it

would seem as though the question is no longer a debatable one anywhere.

In discussing this question, Mr. McQuillin in his work on Muncipal Corporations, vol. 2, p. 1379, sec. 626, uses this language:

"The courts are liberal respecting amendments of corporate records. If, through inadvertence or misapprehension, the record has been defectively made it is competent to complete it according to the truth. Thus, where the record fails to show that the yeas and neas were taken, it may be amended so that it will speak the truth.

"The officer while in office may amend a record made by him. It has been held that one who was formerly town clerk, but who is no longer in office, cannot amend a town record made by him when town clerk. On the other hand, it has been decided that the person in office at the time the proceedings were had may make the amendment; that it is not necessary that he should hold the office when the amendment is made.

"The records of councils or legislative bodies or departments or boards are generally controlled by the body as a unit, and while the determination of what the record should set forth devolves upon the clerk or secretary in the first instance, as a rule, the propriety of amendments belongs to the body itself. But where the charter required the clerk to keep a record of the proceedings of the council which should be received in all courts as evidence of the truth of the matters therein contained, it was held that it could not be amended by vote of the council, but only by the clerk or by order of the court. In one case the record showed the election of a street commissioner by a majority of one vote, resulting from a ruling of the presiding officer, sustained by the council, that a certain member could not change his vote. At its next meeting before approving the minutes, the council ordered them to be corrected so as to show that the member in question was allowed

to change his vote, and, hence, 'that there was no election.' Here the charter prescribed that the council 'shall determine the rules of their proceedings and keep a journal thereof,' and required the clerk to make an accurate record of all proceedings. The amendment was sustained.''

In accordance with the foreging views, Mr. Smith, vol. 1, sec. 313, p. 305, of his work on Municipal Corporations, uses this language:

''The record of the council, kept by the proper officer, except subject to the rights of the council itself to correct, is to be accepted as correct in the absence of fraud. Minutes may be amended by the council even after approval where no intervening rights have accrued. When the officer in charge of municipal records produces them in court as the council record they can only be impeached for fraud. The minutes of a preceding meeting may be corrected at the next succeeding meeting in order to show yeas and nays in compliance with the statute. A *nunc pro tunc* order is competent to make the minutes speak the truth.''

The Supreme Court of Connecticut, in discussing this question in the case of Boston Turnpike Company v. Town of Pomfret, 20 Conn. 590, l. c. 595 and 596, uses this language:

''Courts, however, have never adopted, and from their nature it would not be practicable to adopt, those strict, technical and peculiar rules as to their correction, which apply to the amendment of judicial records. On the contrary, it is deemed of so great importance to uphold the proceedings of our municipal corporations, that courts are disposed to be as indulgent in allowing entries of their proceedings to be amended, as is consistent with the safety of those whose interests would be affected by them. From carelessness, on the part of the clerks of our towns and other municipal corporations, or their not sufficiently appreciating the importance of fully and precisely describing their proceedings, they are frequently entered on their records

very loosely and irregularly and it is not to be expected that those officers will always be competent to perform their duty, in this respect, with the correctness which is desirable; to hold, therefore, that their entries, as first made, are beyond the reach of their subsequent correction would produce the greatest confusion.''

In the case of Fossett v. Bearce, 29 Me. 523, the Supreme Court held that where the officer's return upon a warrant for a town meeting did not show that the copies posted up were attested, or that they were posted in conspicuous places, evidence that the copies posted up were attested, and were posted in conspicuous places, was admissible for the single purpose of showing that the officer ought to be permitted to amend his return, and when it appears that he is willing to amend; and that the amendment could be made only by the same officer and on his responsibility.

The Supreme Court of Massachusetts, in the case of Halleck v. Boylston, 117 Mass. 469, held that ''a town clerk has the power to amend his record of the proceedings at a town meeting; and the record so amended cannot be varied or controlled by parol evidence.''

In the case of City of Logansport v. Crockett, 64 Ind. 319, the Supreme Court held that ''where the city clerk failed to keep the record of the yeas and nays upon the adoption of a resolution by the common council, the proper remedy is for the council to cause the record to be amended by a *nunc pro tunc* entry showing the yeas and nays.''

In White v. Clarksville, 75 Ark. 340, the Supreme Court held that where the record of the passage of a municipal ordinance failed to show that the ordinance was passed under a suspension of the rules, the record might be amended so as to show that fact.

The Supreme Court of New Hampshire, in the case of Scammon v. Scammon, 28 N. H. 419, l. c. 429, held that ''as the town clerk may be permitted to amend

his return according to the fact (Bishop v. Cone, 3 N. H. 513; Gibson v. Bailey, 9 N. H. 176), it was better that an amendment should be required, than that any presumption should be adopted to support the deficient record."

In Mott v. Reynolds, 27 Vt. 206, the Supreme Court held that the town clerk while in office and having the custody of the records, may, generally, make them conform to the facts by altering or amending them; and this though he may have been out of office but is again restored.

In Ryder Estate v. City of Alton, 175 Ill. 94, l. c. 97, the Supreme Court said: "Whether the record was written up at the time the examination was made by the witnesses called is not shown, for no attempt was made to show that that record of the council as produced by the city clerk was wrong. Where an officer of a municipal corporation having charge of the records produces the same as the record, the same can be attacked only for fraud; and if the record was not written up at the time it was examined by the witnesses, the clerk may amend the same according to his knowledge of the truth, so long as he has the custody thereof as clerk."

In Commonwealth ex rel. v. Schubmehl, 3 Lack. Leg. News (Pa.) 186, it was held that the law imposed upon the secretary the duty of recording the action of the council, subject to its correction.

In Everett et al. v. Deal et al., 148 Ind. 90, it was held that it was competent for the council to correct its record so as to speak the truth.

The same rule is announced in the case of Becker v. City of Henderson, 100 Ky. 450. In fact, there are numerous other cases of similar import throughout the country.

We, therefore, hold that the board had the authority to correct its record to speak the truth, and according to the authorities just considered the contention of counsel for respondent, that the bonds are

void because the record failed to show that the board failed to designate the place where the election should be held is untenable, and this question is decided in favor of the relator.

II.   Counsel for respondent next insist that the bonds are invalid and void for the reason that the amount of outstanding bonds of the common school districts which were merged into the Consolidated District, together with the bonds voted on July 21, 1917, is in excess of five per cent of the .assessed valuation of said district, and therefore violative of Section 12 of. Article X of the State Constitution, and cite the following authorities in support thereof:   Sec. 6, Laws 1913, p. 723;   Thornburg v. School District, 175 Mo. 12, l. c. 28;   Dillon on Municipal Corporations, vol. 1, sec. 360;   Plunkett's Township v. Crawford, 27 Pa. St. 107;   Winkleman v. Levee District, 171 Mo. App. l. c. 56;   Thompson v. Abbott, 61 Mo. 176;   McQuillin on Munic. Corp., vol. 1, sec. 294.

*Indebtedness.*

In the presentation of this proposition counsel for respondent assume that when Consolidated School District No. 1 was organized the law imposed upon it the obligation to pay off and discharge the $1500 and $3000 existing respectively against school districts Nos. 14 and 24 in Mississippi County, previously mentioned.   That is the principal proposition presented by this record for determination, and if that assumption is well taken then unquestionably the bonds in dispute are void, for the reason that if they be added to the $4500 before mentioned the Consolidated District would then owe $9500, or $4337.25 more than the constitutional limitation, which under the authorities last cited would be absolutely void, if not the entire $5000, regarding which we express no opinion.

But the question is, did the relator, under the facts disclosed by this record, become obligated to pay the $4,500 of indebtedness of Districts Nos. 14 and 24.

The answer to that question depends upon the meaning of Section 6, Laws 1913, page 721, the act under which the relator was organized. That section reads:

"Whenever any consolidated district is organized under the provisions of this act, the original districts shall continue until June 30th, following the organization of said consolidated district, and at that time 'all the property, money on hand, books and papers of the school districts whose schoolhouse sites are included within said consolidated district shall be turned over to the board of directors of the consolidated district, and also all bonds outstanding against the aforesaid districts shall become debts against the consolidated district. The division of property and money on hand in case school districts are divided by the formation of any consolidated district shall be governed by Sections 10839 and 10840."

It will be observed by reading this section of the act that only in those cases where the consolidated district embraces or takes the sites and schoolhouses of the local districts, are the officers of the latter required to turn over to the officers of the former all the property, money on hand, books and papers which they owned and had on hand just prior to and at the time of the consolidation, and after so providing, the act proceeds with the following language: "and also all bonds outstanding against the aforesaid districts shall become debts against the consolidated district;" that is, the bonded indebtedness of such local districts whose sites and school houses have been taken by the consolidated district shall become the indebtedness of the latter; but no such provision is made for the consolidated district to assume the indebtedness of any local district where the schoolhouse and site therefor are not taken by the former; nor can the consolidated district demand or receive the property, money, books or papers of the local districts, except in those cases where the former takes over the site and schoolhouse of the latter. This is not only the clear meaning of the

statute, but it is also the plain letter thereof; and since the record in this case shows that the sites and school-houses in Districts Nos. 14 and 24 of Mississippi County were not embraced within the boundaries of the consolidated disrict, it necessarily follows from what has been said upon the subject, the law has not imposed upon the consolidated district the obligation to assume and pay the bonded indebtedness of said Districts Nos. 14 and 24, and should this court hold to the contrary we would do violence to both the letter and spirit of the statute.

We, therefore, hold that in computing the indebtedness of said consolidated district, the courts and other state, county and school district officers must exclude the $4500 indebtedness of said local School Districts Nos. 14 and 24 in Mississippi County, and by so doing the $5000 bonded indebtedness authorized by the vote of the consolidated district on July 21, 1917, is within the constitutional limitations, and therefore valid.

III. Counsel for respondent also assail the validity of the bonds mentioned in the evidence for the reason

Impairment
of Contracts.

stated that "the act of the Forty-seventh General Assembly, approved March 14, 1913, is violative of Section 10 of Article 1 of the Constitution of the United States, in that it authorizes and results in the impairment of the obligations of contracts," and cite us to the following authorities in support thereof: Laws 1913, sec. 6, p. 723; Seibert v. Lewis, 122 U. S. 284, l. c. 294; State v. Young, 29 Minn. 474; Board Education of Hawesville v. Railway, 110 Ky. 932, l. c. 941; McQuillin on Munic. Corp., vol. 5, sec. 2373, p. 4971; Dillon on Munic. Corp., sec. 113, p. 192.

Viewing this proposition in the light of the conclusions announced in paragraph two hereof, we are unable to conceive in what possible way the incurring of this $5000 bounded indebtedness by the consolidated district can result in the impairment of any of its obligations or contracts. If I correctly understand the

record in this case, it shows that this consolidated district was organized on the same day and at the same time the bonds were voted for, and that it did not and could not under those facts have had any other contract or obligation of any kind, much less one that could have been impaired.

There is no merit in this contention.

IV. If counsel for respondent mean by the position stated in paragraph three of this opinion, that the act of the Legislature mentioned therein is unconstitutional because it authorizes the consolidated district to take parts of the taxable lands and other property of said local Districts Nos. 14 and 24 and add the same to the former, and thereby and to that extent diminish the taxable assets of said local districts, and to that extent lessen their ability to pay their respective parts of said $4500 before mentioned, it will suffice to state at this time that in the first place, said local districts are not, nor are any of its creditors, here complaining; second, that this record fails to show that, notwithstanding the supposed diminution of the taxable assets of said local districts, they are not still amply able to pay their respective indebtedness in full; third, if such a question should ever be presented to this court for determination, it would be wise to wait until that time before deciding the same, for "sufficient unto the day is the evil thereof;" and, fourth, because the respondent in this case has no authority to represent or litigate the rights of those local districts or their creditors, neither being parties hereto.

There is no merit in this proposition.

V. Counsel for respondent also contend that the act of the Legislature under consideration is violative of the provisions of Section 12 of Article 10 of the State Constitution, which prohibits the incurring of an in-

debtedness in excess of the current revenues
<span style="float:left">Vote of<br>Taxpayers.</span> for any one year without the assent of two-thirds of the voters of the district.

We must confess we do not understand just what counsel are driving at by this contention, for the reason that the record in this case discloses the fact that not only two-thirds of the electors voted for the bonds, but that forty-five out of the forty-seven who voted cast their ballots in favor of issuing the same.

There is no merit in this contention.

VI. It is finally insisted by counsel for respondent that "the act in question further violates the provisions of Section 12, Article X, of the Constitution, in
<span style="float:left">Excessive<br>Indebtedness.</span> that it permits and results in the incurring of an indebtedness by consolidated districts to an amount in excess of five per cent of the valuation of the taxable property therein."

This insistence is untenable, and for the reasons stated in paragraph three and five of this opinion this point is decided against the respondent.

We are, therefore, of the opinion that the alternative writ of mandamus heretofore issued should be made permanent; it is so ordered.

All concur.