In the Matter of the Petition of KANSAS CITY, MISSOURI, a Municipal Corporation, for a pro forma decree authorizing the issuance of $453,000 principal amount of Sewer Bonds, Fourth Issue, Series A, of said City, and adjudicating the validity of said bonds.

CITY OF KANSAS CITY, MISSOURI (Petitioner), Respondent, v. CLARENCE B. REED and ALMA H. REED (Interveners), Appellants.—No. 41172.—216 S. W. (2d) 514.

Court en Banc, November 8, 1948.

Rehearing Denied, December 13, 1948.

*Pierre R. Porter* for appellants.

*David M. Proctor*, City Counselor, *Benj. M. Powers*, Associate City Counselor, *Robert B. Fizzell* and *Stinson, Mag, Thomson, McEvers & Fizzell* for respondent.

[514] LEEDY, C. J.—This is a proceeding under §§ 3312-3316, R. S. '39 and Mo. R. S. A., to obtain a pro forma decree authorizing the issuance, and decreeing the validity of $453,000 principal amount of sewer bonds of Kansas City, which bonds had been authorized by the voters of that city at a special election held November 4, 1947. At such election a total of $35,561,000 of general obligation bonds were authorized under fifteen [515] different propositions, as well as an issue of $6,000,000 of airport revenue bonds. Among the propositions was No. 4, "For constructing, extending and improving sanitary and storm sewer systems, the sum of Three Million, Nine Hundred Seventy-six Thousand Dollars ($3,976,000.00)." The bonds in controversy are a part of those authorized under this proposition, and they are the first of all of those authorized at such special election which the city has sought to issue.

The appellants, as taxpaying citizens, filed their intervening petition contesting the validity of the bonds. The trial court decreed their validity as prayed by the city, and denied the intervening petition of appellants, and the latter have appealed. Their intervening petition attacked the validity of the bonds on the ground that certain legally qualified voters "had no opportunity to vote" at the special bond election, alleging "all of this being in violation of" certain named sections of the Constitution of Missouri, and the Constitution of the United States, and amendments thereto; and because the issuance and delivery of the bonds herein sought to be validated will cause the total indebtedness of the city to exceed the constitutional and statutory debt limitations applicable to said city.

The facts giving rise to the first of these contentions may be stated as follows: At the general election held November 5, 1946, there was submitted to, and adopted by, the electors of Kansas City an amendment to the charter of the city by which the corporate limits of the city were enlarged so as to include nineteen square miles of territory in adjacent Clay County. The amendment expressly provided that it "shall be effective as of January 1, 1950." The voters in the proposed annexation area in Clay County were not permitted to vote at the election held in Kansas City upon the question of amending that city's charter so as to extend its corporate limits across the river and into Clay County. Nor were they permtted to vote at the bond election held a year later, and before the effective date of

the charter amendment. We take judicial notice of the pendency of an original quo warranto proceeding in this court wherein the validity of the annexation of the Clay County area appears to be the pivotal question. (State, ex inf. Taylor, Atty. Gen'l, relator v. City of North Kansas City, resp. [Bean, et al., intervenors], No. 40216.) However, there is no such question involved here because appellants expressly concede, for the purposes of this case, that said annexation was legal. Appellants' first proposition is merely this: Does the circumstance that the voters of the annexed area were not allowed to vote at the bond election render the bonds invalid? We think not. As just stated, by its very terms the charter amendment extending the corporate limits of the city does not become effective until January 1, 1950. Appellants do not suggest, nor does it occur to us, how it would have been legally permissible for the voters in the annexation area to have voted at the bond election which was held prior to the effective date of the annexation amendment. Appellants cite no cases in support of their position, but content themselves by pointing to a very considerable number of constitutional provisions without undertaking to show their applicability. Says their brief, ''In truth and in fact these sewer bonds are illegal and invalid under the Constitution and laws of the State of Missouri and under the Constitution and laws of the United States, including

Sections 1, 2, 10, 13, 25, 26 and 28, of Article I of the Constitution of Missouri.

Sections 26(a), 26(b), 26(c), 26(d), 26(e), of Article VI of the Constitution of Missouri.

Section 2 of Article VIII of the Constitution of Missouri.

Sections 1, 3 and 11, of Article X of the Constitution of Missouri.

Sections 7368, 7368a, 7368b, 7368c, 7368d, 7369, 7371, 7372, 7454, 7456 and 11469 of the Revised Statutes of Missouri, 1939, and all amendments thereto, including the Laws of Missouri, 1945, pages 1299 to 1302, inclusive.

The Fifth, Fourteenth, Fifteenth and Nineteenth Amendments to the Constitution of the United States.

[516] Sections 31 and 43 and Subsection (3) of Section 47 of Title 8 of the United States Code Annotated,
and

Section 51 of Title 18 of the United States Code Annotated.''

We are thus merely invited to speculate as to the respects in which the constitutional validity of the bonds may be thought to be involved, and this we decline to do under ''the general rule that, to raise a constitutional question, the particular provision of the Constitution alleged to be violated must be pointed out. And it is not sufficient that certain sections of the Constituion be set out and the assertion made that rights thereunder have been violated, but the

facts which constituted such violation must be set out." Houts, Missouri Pleading and Practice, Vol. 2, § 484, p. 237; State ex rel. Kenosha Auto Transport Corp. v. Flanigan, 349 Mo 54, 159 S. W. 2d, 598.

The second question is whether "the bonds proposed to be issued" together with the other indebtedness of Kansas City will cause the city's debt to exceed constitutional limitations. Appellants invoke §§ 26(b) and 26(c) of Art. VI, Constitution of Mo., 1945, which (it is conceded) respectively permit Kansas City to "become indebted in an amount not to exceed five per centum of the value of taxable tangible property therein as shown by the last completed assessment for state and county purposes," and an additional five per centum of said valuation for general city purposes. (There are other sections authorizing still further amounts upon which the city relies, but they need not be noticed because not necessary to a decision of the case.) Appellants' statement makes no reference to any facts relating to this question, and while their petition is grounded on the proposition that the issuance and delivery of the particular bonds sought to be validated by this proceeding ($453,000 in amount) would have the effect just mentioned, it appears from the argument that their real contention is that the total of all the general obligation bonds authorized at the special election, when added to the amount of the city's indebtedness outstanding as of the date of the bond election, would cause the municipality's indebtedness to exceed permissible limits. In the view we take of the matter, it is unnecessary to further develop the nature and extent of constitutional limitations upon municipal indebtedness because the case may be made to turn on the single question of whether, in determining the outstanding indebtedness of the city, the bond sinking fund of the municipality is deductible. For present purposes it will be assumed, in accordance with appellants' contention, that the date of the bond election, November 4, 1947, is the correct date for computing the municipal indebtedness for the purpose of determining whether the applicable debt limitations will have been exceeded. Under the view most favorable to appellants, the supposed excess over permissible limits would amount to $596,904. The city's bond sinking fund, which was held solely and exclusively as such, amounted to $1,176,598.06 ($768,598.06 being in cash, and $408,000 in United States Government obligations having a market value in excess of that figure). If the amount of the sinking fund may be deducted in determining the city's indebtedness, then it is tacitly conceded that the question of exceeding prescribed limitations passes out of the case. This court has never squarely ruled this question. In Steinbrenner v. St. Joseph, 285 Mo. 318, 226 S. W. 890, while denying the necessity of discussing "whether the sinking funds in the hands of the city should be taken

from the debt'' (in determining the city's indebtedness), nevertheless, the court did make such a deduction, and in doing so found that the proposed bonds would still exceed the constitutional debt limit.

"Under a constitutional or statutory provision limiting the amount of indebtedness which a municipality may lawfully 'incur, the view is well supported that even as regards such part of the sinking fund as is not invested in the municipality's own obligations, so much of the fund as is inviolably pledged or appropriated to the payment of a debt contemplated by the constitutional or statutory restriction is to be deducted in computing the actual indebtedness. While an individual may use his assets for any purpose he sees fit, municipal officials intrusted with the control and application [517] of a fund created for a definite purpose are charged with the duty of using it only for that purpose. Accordingly, a sinking fund invested, for example, for the purpose of paying bonds must not be diverted for the payment of the salaries of officials of the municipality. It is to be used to reduce that particular debt which it came into existence to deplete, and hence, will in fact lessen that liability to the full extent of the fund.'' 38 Am. Jur., Municipal Corporations, § 481, pp. 160-161. See, also, Annotation, 125 A. L. R. 1393. The bond sinking fund of Kansas City must be held to meet the requirements above referred to, for it is provided by Laws '45, pp. 1389-1391, §§ 3291.1-3291.5, Mo. R. S. A., that the interest and sinking fund of every county, city, incorporated town or village, school district or other political subdivision of the state "shall be kept separate and apart from all other funds of such governmental unit, so that there shall be no commingling of such funds with any other funds of such . . . city'' . . . and that such fund shall not "be used for any purpose other than to meet the interest and principal of such bonds.'' The act makes it a misdemeanor to fail to carry out the foregoing provisions, and permits any such sinking fund to be invested in general obligations of the State of Missouri, or of the United States or of any county, city or school district in this state. § 5 of the act provides as follows: "All money collected and all securities purchased or held belonging to the interest and sinking fund of any .. . . city . . . shall be exempt from attachment and execution. Such money and securities shall be exempt from being levied upon, taken, sequestered, or applied toward paying the debts of any such county, city, incorporated town or village, school district, or other political corporation or subdivision of the state, other than for payment of the indebtedness for which such funds and securities were provided. *The money and securities so held shall be deemed to be an inviolable sinking fund for the purpose of extinguishing the indebtedness for which such fund had been levied and collected.''*

Appellants rely on Pennsylvania cases holding that securities in the sinking fund other than obligations of the city itself may not be

deducted. (Brooke v. Philadelphia, 162 Pa. St. 123, 29 A. 387; Schuldice v. Pittsburgh, 251 Pa. St. 28, 95 A. 938.) This appears to be an exception to the rule generally applied elsewhere. See Annotation, supra.

We are of the opinion that the bond sinking fund having been inviolably set apart under the statute above referred to, and considering the object of the debt limitation as a safeguard against extravagant or unwise expenditure of public funds, that the bond sinking fund should be deducted in determining the city's indebtedness.

The judgment of the circuit court should be, and it is affirmed All concur.

*     *     *     *     *

■ PER CURIAM:—Appellants-interveners' motion for rehearing complains that our opinion has overlooked and misinterpreted material matters of law and fact; and that we have failed to perform our judicial duty under Sec's 3312 to 3316, R. S. 1939, Mo. R. S. A. We shall return to that question presently, but first a word in review.

The statutes here involved provide a proceeding whereby a municipality may seek a pro forma decree in the circuit court approving a bond issue. Sec. 3313 authorizes any taxpaying citizen to file an intervening petition contesting the validity of the bonds. Sec. 3314 provides: "Upon hearing, *whether an answer has been filed or not,*" (italics ours) "the court shall carefully investigate the record concerning such bond issue, together with all proofs submitted at such hearing, and if the court be of the opinion that said bonds are legal and that the laws of the state have been fully complied with then such court shall make an order and decree adjudging such bonds to be a valid and binding obligation . . . "

At the beginning of appellants' brief, just after its statement of facts, appellants set out concisely what their contentions here are. They said: "Appellants contend that the bonds in question in this case are invalid [518] because (1) the legally qualified voters of the area in Clay County annexed to Kansas City at the election held on November 5, 1946, were not permitted to vote at the bond election held on November 4, 1947, and (2) they further contend that the bonds of Kansas City proposed to be issued together with the other indebtedness of said City will cause the City's debt to exceed the constitutional and statutory limitations applicable to said City." In a later paragraph the brief declared that the instant case presents a flagrant example of denial of due process, taxation without representation, and civil interference with the free exercise of the right of suffrage. Our opinion passes on all those questions.

But later the argument in the brief says: "In truth and in fact these sewer bonds are illegal and invalid under the Constitution and law of the State of Missouri and under the Constitution and laws of the United States, including—." Here follows a citation of twelve sections of our State Constitution; eleven sections of our statutes; four sections of the Federal Constitution; and three sections of the Federal statutes, all set out on page 3 of our opinion. These citations are made by appellants without any explanation of their application, other than as stated in the last paragraph hereof.

Our opinion in answer to that contention said: "We are thus merely invited to speculate as to the respects in which the constitutional validity of the bonds may be thought to be involved, and this we decline to do under 'the general rule that, to raise a constitutional question, the particular provision of the Constitution alleged to be violated must be pointed out. And it is not sufficient that certain sections of the Constitution be set out and the assertion made that rights thereunder have been violated, but the facts which constituted such violation must be set out.' " [citing authority]

Returning now to appellants' complaint stated at the outset. They contend that since Sec. 3314, supra, provides "the court shall carefully investigate the record concerning such bond issue," and determine its validity "whether any answer has been filed or not," therefore it is our duty to inquire into all the constitutional questions that conceivably might arise under the sections they have cited, notwithstanding they have failed to point out what those questions are. In other words they say that contrary to the usual rule, the statute puts the burden on this court, not them, because under Sec. 3314 we would have to scrutinize the bond issue carefully even though they had not intervened at all and filed an answer.

We have considered and ruled adversely upon all the questions appellants specifically presented in their original brief, and those are the only questions that occur to us. Even now, on motion for rehearing, appellants do not suggest any new questions, but in effect merely complain of error in the rulings already made. They overlook the probable fact that the value of their property has been greatly appreciated in value by reason of its proximity to a growing city during years when they were not required to pay city taxes. If the annexation be declared void in the pending suit of State ex inf. Taylor, Atty. Gen. relator v. City of North Kansas City [Bean et al. interveners] they will not have to pay City taxes. If it be sustained they must share the common burden after their effective annexation.

The motion for rehearing is overruled.