JAMES R. BARNES ET AL., Appellants, v. KANSAS CITY, MISSOURI, a Municipal Corporation, ET AL., Respondents, No. 41372—222 S. W. (2d) 756.

Court en Banc, July 18, 1949.

Rehearing Denied, August 12, 1949.

520

*James P. Aylward, George V. Aylward* and *Terrence M. O'Brien* for appellants.

*David M. Proctor,* City Counselor, and *John J. Cosgrove,* Assistant City Counselor, for respondents.

DOUGLAS, J.—This is a class action. It presents the question whether a municipal bond issue approved by the voters of Kansas City at an election held November 4, 1947 is valid as to these plaintiffs and all others similarly situated who were not permitted to vote at the bond election because they reside, in an area annexed to Kansas City by charter amendment already adopted but not then in effect.

The plaintiffs and the members of the class they represent are residents of Clay County, adjacent to Kansas City. They, with some 15,000 to 20,000 others, live in an area of about 19 square miles. This area was annexed to Kansas City at an election held November 5, 1946, previous to the bond election, approving an amendment to the charter of Kansas City to enlarge its boundaries so as to include the area in Clay County. The time the amendment will become effective is fixed as January 1, 1950.

Kansas City is a city under a special charter. Such cities are authorized to amend their charters under Article VI, Section 20 of the Constitution, 1945 which provides that an amendment "shall become a part of the charter at the time and under the conditions fixed in the amendment." The charter of Kansas City in Article II, Section 15 conforms to this provision.

The chief contention of plaintiffs is based on the premise that the bond issue is invalid as to them because they were not permitted to vote at the bond election. To sustain their contention it would be necessary to hold that plaintiffs became qualified electors of Kansas City immediately upon the adoption of the annexation amendment, and to ignore the provision postponing its effective date to January 1, 1950. Under such a holding it would follow that the bond election would be invalid because it was not submitted to the qualified electors of the city as enlarged. Two-thirds of the qualified electors of a city must approve the bond issue. Constitution 1945, Art. VI, Secs. 26(b), 26(c), and 26(d).

We cannot sustain plaintiffs' contention. We hold they were not qualified electors of Kansas City at the time of the bond election, so were not authorized to vote on the bond issue, and the validity of the bond issue was not thereby affected.

Plaintiffs by this action seek to enjoin the issuance and sale of the entire bond issue totaling $35,561,000 general obligation bonds authorized under 15 different propositions, and $6,000,000 airport revenue bonds. They also seek a declaratory judgment of their rights and status in connection with the bond issue. They rely on a number

of constitutional grounds. Among them are the due process provisions of the Fifth and Fourteenth Amendments, and the suffrage guaranties of the Fifteenth and Nineteenth Amendments of the Federal Constitution. They also specify violations of the following sections of the Missouri Constitution, 1945. Art. 1, Secs. 1, 2, 10, 13, 23, 26, 28; Art. VI, Secs. 26(a), 26(b), 26(c), 26(d), 27; Art. VIII, Sec. 2; Art. X, Secs. 1, 3, 11. They also rely on provisions of the United States Code and Missouri Statutes.

Plaintiffs further assert that the defendant officials "conspired inequitably" to issue the bonds without permitting them to vote at the bond election.

The matter was heard before Hon. Warren L. White, Circuit Judge of Springfield as Special Judge. He has filed with his judgment a well-reasoned and comprehensive opinion which we will follow and borrow from herein, and by this reference acknowledge the credit due him.

The trial court's judgment declared the bond election was valid; the plaintiffs and others of their class had no right to vote thereat; the issuance of the bonds was duly approved at the election; the entire issue constituted lawful and valid obligations of Kansas City; and the amount of the issue was within the constitutional limits of indebtedness. The injunction was denied. Plaintiffs have appealed.

The same question raised by plaintiffs has been recently ruled by this court as to the validity of a part of this same bond issue in the case of Kansas City v. Reed, 358 Mo. 532, 216 S. W. (2d) 514. In that proceeding for a pro forma decree to approve $453,000 of the bond issue intended for sewer purposes we held such bonds were valid against the contention that the appellants in that case likewise residents of the annexed area were not allowed to vote at the bond election. We pointed out it would not have been legally permissible for the residents in the annexed area to have voted at the bond election which was held prior to the effective date of the annexation amendment because at the time of the bond election they were not qualified electors of Kansas City. We adhere to that ruling in this case.

The fact plaintiffs did not have the opportunity to vote at the bond election does not affect their obligation to pay their proportionate share by taxation to retire the bonds after the annexation becomes effective.

An unincorporated area may be annexed by a city without the consent, and even against the remonstrance of the majority of the persons residing in the annexed area. Hunter v. City of Pittsburgh, 207 U. S. 161; City of St. Louis v. Allen, 13 Mo. 400.

It is a general rule that property brought within the corporate limits of a city by annexation is subject to taxation to discharge municipal indebtedness previously incurred and existing at the time

of annexation. 1 Dillon, Mun. Corps. 5th Ed., § 355. ''As a rule, existing debts of the corporation contracted before the limits were extended, unless otherwise provided by law, are chargeable upon the added territory as well as that comprehended by the boundaries before they were altered or extended.'' 2 McQuillin, Mun. Corps. 3rd. Ed., § 7.47. Such rule is applicable here.

While .there are decisions to the contrary, the greater weight of authority supports the general rule. See: Gigandet v. Brewer, 15 N. E. (2d) 964 (Ohio 1938); White v. Atlanta, 68 S. E. 103 (Ga. 1910); Maddrey v. Cox, 11 S. W. 541 (Tex. 1889); Pence v. Frankfort, 41 S. W. 1011 (Ky. 1897); State v. Cincinnati, 40 N. E. 508 (Ohio 1895); Gottschalk v. Becher, 49 N. W. 715 (Neb. 1891); Adriaanson v. School Dist., 226 N. Y. Supp. 145; Cohen v. Houston, 176 S. W. 809 (Tex. 1915); Clay v. Eustis, 7 Fed. (2d) 141 (Fla. 1925); State ex rel. v. Smith, 343 Mo. 288, 121 S. W. (2d) 160 (1938).

In State ex r. v. Smith, 343 Mo. 288, 121 S. W. (2d) 160, supra, we discussed the question of the liability of a consolidated school district for the pre-existing bond indebtedness of its component common school districts. One of the common school districts had no bonded indebtedness at the time of the consolidation. Yet, we held the statute making the consolidated district liable for all the outstanding bonds was constitutional even though a common school district, formerly free from debt, thus became liable for its proportionate share. We held the constitutional provision requiring a two-thirds vote of the electors of a common school district in order to create an indebtedness did not apply in such a case. Shapleigh v. San Angelo, 167 U. S. 646 supports this conclusion.

We have no provision in our constitution governing the adjustment of pre-existing rights and liabilities when a city changes its boundaries. While the legislature has made such provisions in certain cases, it has not done so where a city annexes an unincorporated area as here. So plaintiffs argue that liability for the debt created by the bond issue cannot be imposed on them where there is no statutory authority to do so. We disagree. We hold that when the statutes are silent, the general rule will apply. But we do find the cases of Laramie County v. Albany County, 92 U. S. 307, Reclamation District No. 70 v. Birks, 159 Cal. 233, 113 Pac. 170, and other cases relied on by plaintiffs, support a contrary view.

This court considered the same question as to school districts in Thompson v. Abbott et al., 61 Mo. 176. There, school subdistrict No. 3 was dissolved and its territorial limits merged with the city of Springfield for school purposes. Such annexation was authorized by statute, but the statute was silent as to the liability for the debts of the merged district. We held the city became liable for such debts by operation of law. We said where no arrangements are made respecting the property and liabilities of the corporation that ceases to

exist, the subsisting corporation will be entitled to all the property, and be answerable for all the liabilities. We may apply the same reasoning in this case. Accordingly, the annexed area will become liable for its proportionate share of the liabilities of Kansas City by operation of law when the annexation becomes effective. We hold there is no need for express statutory authority in order to impose such liability upon the annexed area. Town of Mt. Pleasant v. Beckwith, 100 U. S. 514.

The case of State ex r. Consolidated School District v. Hackmann, 277 Mo. 56, 209 S. W. 92 construing a particular statute not pertinent here does not conflict with our conclusion.

We find the rule expressed that "debts of a municipality contracted before an annexation of territory become a burden upon the added territory as well as upon the original territory, *in the absence of statutory provision to the contrary.*" (Our emphasis) 43 C. J., Mun. Corps., § 122. And in Kocsis v. Chicago Park Dist., 362 Ill. 24, 98 N. E. 847 the court said that *unless the legislature otherwise provides* the debts of the corporations which are consolidated or annexed become the debts of the consolidated or annexing corporations, citing 1 Dillon, ▮▮▮▮ Mun. Corps., 5th Ed., § 357 and Mount Pleasant v. Beckwith, 100 U. S. 514. (Our emphasis) For the situation in this case we find the legislature has not made any statutory provision to the contrary, in fact the statutes are silent.

▮ Plaintiffs cite no authorities to sustain their charge that imposing liability for pre-existing debts on the annexed area violates the State and Federal Constitutions under the circumstances of this case. The cases we find subjecting annexed areas to city taxes lead to the opposite conclusion. Hunter v. City of Pittsburgh, 207 U. S. 161; Kelly v. Pittsburgh, 104 U. S. 78; Clay v. City of Eustis, 7 F. (2d) 141, appeal dismissed 273 U. S. 781; State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S. W. 1007. We hold that plaintiffs have failed to sustain their charge of unconstitutionality.

▮ Plaintiffs also charge that the defendant city officials "conspired inequitably" to prevent the residents of the annexed area from voting at the bond election by holding the bond election before the annexation amendment became effective.

There is nothing whatever in the record which shows a conspiracy or any unfairness. The charge is entirely without foundation. The successful result of the bond election was no doubt accomplished by a well-organized campaign and effective publicity to obtain favorable votes by explaining the issues and educating the voters. Such a campaign is usual, not unusual in bond elections, and in elections generally it has become part of our political scheme. If "planning, promotion, propaganda and solicitation of voters" by the city officials interested in the welfare of their city would constitute an illegal conspiracy, probably all elections would be so tainted, and many fair,

526

upright and honest persons who have been active either in their own interest as candidates or in the interest of public issues are tarred with the same brush. We repeat there is not even a suspicion of any inequitable or unfair design or conduct on the part of any defendant: Their acts were lawful and fair.

We will not consider in this case the validity of the annexation charter amendment. That question is squarely before this court in a quo warranto proceeding instituted here before this appeal was filed, and now pending awaiting the report of our special commissioner in the case of State ex inf. Taylor, Atty. Gen. Relator v. City of North Kansas City, Respondent, Bean et al., Intervenors, No. 40,216. Our determination of that question is expressly reserved for decision in that case, and nothing we have said herein shall be construed as considering it. As we said in Kansas City v. Reed, 358 Mo. 532, 216 S. W. (2d) 514, supra, if the annexation be declared void plaintiffs will not be liable for any part of the bond issue here involved. If it be sustained they must share the common burden after the annexation becomes effective.

The trial court in its judgment in this case found the annexation was a lawful and valid exercise of the corporate powers of Kansas City and approved by the voters. That finding will be either confirmed or rendered ineffective by our determination of the pending quo warranto action, so in this case our decision as to it will be withheld. As to all other findings in the judgment we are in full accord, and affirm the judgment as to them. We likewise declare the bonds are lawful and valid, and may be lawfully issued and sold. If the annexation is determined to be valid, plaintiffs will become liable for their share of the burden when the annexation becomes effective.

Accordingly, the judgment will be affirmed except as to the determination of the validity of the annexation, upon which issue we presently withhold our decision.

It is so ordered. All concur.