## RONALD H. WILCOX AND ANOTHER
## v. COUNTY OF OLMSTED.
## CITY OF ROCHESTER, INTERVENOR.

104 N. W. (2d) 297.

June 17, 1960—No. 37,930.

*D. P. Mattson,* County Attorney, *George R. Kerr,* Special Assistant County Attorney, and *R. V. Ehrick,* City Attorney, for appellants.
*Plunkett & Plunkett* and *Duane M. Peterson,* for respondents.

MURPHY, JUSTICE.

This appeal is from a summary judgment of the district court that the respondents' land is not subject to certain taxes levied for the purpose of paying school bonds issued by the Rochester Special School District No. 4.

The facts are not in dispute. On December 18, 1944, Rochester Special School District No. 4 (then Special School District No. 8) levied a direct annual irrepealable tax "upon all of the taxable property in the School District" to raise funds for the purpose of paying the

principal and interest on school bonds issued January 1, 1945. This tax was to be spread in designated amounts each year through 1965. On September 8, 1954, the school district levied a similar tax to be spread each year through 1973 to pay the principal and interest on school bonds issued June 1, 1954. The boundaries of School District No. 4 are by law coterminous with the boundaries of the city of Rochester. On May 25, 1956, the Rochester City Council annexed certain lands to the city, upon the petitions of all the owners, and thus brought that land within School District No. 4. In 1957 the county auditor spread taxes, pursuant to the school district's 1944 and 1954 levies, over all the land within the district including that annexed to it in 1956. The respondents, owners of part of the land annexed at that time, raised an objection to these taxes, and the district court held that they could not be applied to the respondents' land.

The appellants, the county of Olmsted and the city of Rochester, assert that, although there are no Minnesota cases in point, most authorities rule that in the absence of a statute to the contrary property brought within the corporate limits of a municipality by annexation is subject to taxation to discharge municipal indebtedness previously incurred and existing at the time of annexation. In support of this proposition they cite Barnes v. Kansas City, 359 Mo. 519, 222 S. W. (2d) 756, 10 A. L. R. (2d) 553; Smith v. City of Saginaw, 81 Mich. 123, 45 N. W. 964; United States ex rel. Brown v. City of Memphis, 97 U. S. (7 Otto) 284, 24 L. ed. 937; Peterson v. Swan, 231 Iowa 745, 2 N. W. (2d) 70; Gottschalk v. Becher, 32 Neb. 653, 49 N. W. 715; Kocsis v. Chicago Park Dist. 362 Ill. 24, 198 N. E. 847, 103 A. L. R. 141; Lowe v. City of Bowling Green (Ky.) 247 S. W. (2d) 386; Toney v. City of Macon, 119 Ga. 83, 46 S. E. 80; Barber Asphalt Paving Co. v. Hayward, 248 Mo. 280, 154 S. W. 140; and several secondary authorities. We are inclined to agree with the rule adopted in these cases. The owners of property annexed to a municipality (or a school district) ordinarily should not be allowed to enjoy the benefits provided by the municipality without bearing a fair share of their cost.

The respondents do not particularly quarrel with the authorities cited by the appellants. They agree that annexed property may be

subject to taxation after it is brought into a new district but argue that there must first be a valid levy therefor subsequent to the annexation. They point out that only one levy was made for each of the obligations issued by the district and by their brief concede that "A *subsequent* levy by the school district might effectively subject the newly annexed areas of the city to liability for past indebtedness, but in the absence of such *new* levies there seems to be no authority for the county auditor to merely extend a previous levy to these newly annexed areas." They point out that their property was not a part of the district when the original levies were made and that the act of the county auditor ·in extending the tax to their property amounted to an unauthorized levy. They rely on Saxhaug v. County of Jackson, 215 Minn. 490, 10 N. W. (2d) 722, where we held that the county auditor is without power to levy taxes and assessments. We pointed out there that the county auditor's function is merely the mechanical or clerical part of computing assessments regularly levied and of entering them on the records of the county against particular parcels of property and that "the inclusion by him of an assessment, not levied by competent authority, as part of the taxes spread against property was unauthorized and void."

The term "levy" has a variety of meanings. In State ex rel. Minneapolis Fire Dept. Relief Assn. v. City Council, 161 Minn. 103, 105, 200 N. W. 932, 933, we said:

"* * * As applied to the amount to be raised by taxation, it means the formal and official action of a legislative body, invested with the power of taxation—whether national, state or local—whereby it determines and declares that a tax of a certain amount, or of a certain percentage on value, shall be imposed on property subject thereto."

The issue presented by this appeal requires an interpretation of the term "levy" as used in M. S. A. 475.61. That statute relates to tax levies for the purpose of paying general obligations of the taxing district. Subd. 1 of that section provides in part:

"The governing body of any municipality issuing general obligations shall, prior to delivery of the obligations, levy by resolution a direct general ad valorem tax upon all taxable property in the municipality to be spread upon the tax rolls for each year of the term of the obligations."

It is clear from the foregoing that the legislature intended that but one levy be made and that, before the bonds are issued.[1] The statute further contains the important provision that the tax is to be spread upon the tax rolls *"for each year of the term of the obligations."* (Italics supplied.) Section 475.61, subd. 2, so far as applicable here, provides:

"The recording officer of the municipality shall file in the office of the county auditor * * * a certified copy of the resolution, * * *. No further action by the municipality is required to authorize the extension, assessment and collection of the tax, but the municipality's liability on the obligations is not limited thereto and its governing body shall levy and cause to be extended, assessed and collected any additional taxes found necessary for the full payment of the principal and interest. * * * The auditor shall annually assess and extend upon the tax rolls the amount specified for such year in the resolution, * * *."

Pursuant to this statute the school board by resolution fixed and determined specific amounts to be paid each year to service and retire the two bond issues. The levy of 1944 provided for amounts to be collected for each year from 1945 to and including 1965; the levy of 1954 provided for the amounts to be collected each year during the period 1954 to and including 1973.

We cannot agree with the respondents that when the county auditor recorded the tax against the annexed property for its share of the tax in the years following annexation that he was exercising a legislative function. In the absence of statutory provisions to the contrary, property annexed by valid statutory proceedings stands just as any other property within the district to which it has been annexed. It is our view that the event which actually subjected the annexed property to the burden of the tax was the annexation proceeding under § 413.22, by which the owners of the annexed property voluntarily petitioned to become a part of the city. After the city of Rochester by resolution declared this property to be an addition to the city, it became in the words of the

---

[1] M. S. A. 475.61, subd. 2, provides that a subsequent levy for "additional taxes" may be made when necessary to retire the obligations.

statute (§ 413.22) "a part of such city as effectually as if it had been originally a part thereof." Pursuant to § 413.22, subd. 2, a certified copy of the resolution annexing the property involved was certified to and filed in the office of the county auditor. The property not only became a part of the city of Rochester, acquiring the many advantages that came with annexation by way of established public services and facilities,[2] but became as well a part of School District No. 4, sharing in the benefits and burdens of the school district including levies for improvements not fully paid for at the time of annexation. It is our view that, in placing the annexed property on the assessment lists and including it in the tax base of the district as enlarged, the auditor was performing a ministerial and not a legislative act. Subsequent legislative action by the school board was not necessary to impose the tax obligation upon the annexed property. The original levies effectively did that. By fixing the amount specifically due each year over the period from 1945 to and including 1965 and from 1954 to and including 1973 the school board established a standing and continuing levy upon all of the property in the district and such further property coming into the

---

[2]Counsel for the school district argued that by annexation the property became a "part of a world famed city with the following facilities:

"An electric light plant and distribution system worth millions fully paid for,

A water distribution system worth more than a million fully paid for,

A sanitary sewer system and sewerage disposal plant worth millions mostly paid for and the balance to be paid according to use,

A storm sewer system worth a million,

A centrally located modern city hall fully paid for,

A fire department with three modern fire houses fully paid for,

A policy [police] system with quarters fully paid for,

The famous Mayo Civic Auditorium fully paid for,

Soldiers Field with golf course, swimming pool and athletic field fully paid for,

Eighteen other parks, fully paid for,

Municipal Air Port fully paid for,

A public library fully paid for,

A school system worth many millions with a four and one-half million dollar senior high school just completed and paid for out of the bond issue to which objections are being made."

district, during the life of the indebtedness, which was not exempted by statute.

It seems the underlying difficulty which has given rise to the dispute before us grows out of the fact that the annexed property, which was formerly in School District No. 1356, remains subject to the payment of a bonded indebtedness for improvements in that district. The respondents complain that there is a basic "inequality" in requiring payment of taxes for school improvements in the new district while they are still subjected to the payment of a similar tax for improvements in the old district. It appears that, because of the special character of School District No. 4 to which the property has become annexed, there is no statutory provision by which the common indebtedness of both districts might be pooled. We assume, however, that this was a circumstance which the property owners considered when they originally sought annexation by their voluntary petitions. At any rate, the status of the obligations of the respondents with reference to the bonded indebtedness in the old district is not before us. We hold that as to the unpaid portion of the bonded indebtedness of School District No. 4 the respondents are subject to their share of the tax in the years subsequent to annexation.

Reversed.